HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Richard B. Honig, Esq.
Attorneys for Creditor Bernabe Cabrera
One Gateway Center
Newark, New Jersey 07102-5323
973.621.9020

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>ABEL HERNANDEZ,<br><br>    Debtor. | Case No. 17-16556-JKS<br><br>Chapter 11 Proceeding<br><br>Judge John K. Sherwood |
| BERNABE CABRERA,<br><br>    Plaintiff,<br><br>    v.<br><br>ABEL HERNANDEZ,<br><br>    Debtor/Defendant. | Adversary Proceeding No. 17-1721 JKS<br><br>Return date: April 3, 2018 at 2:00 p.m. |

**DECLARATION OF CHRISTINE GILLEN, ESQ.
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

CHRISTINE GILLEN, of full age, hereby declares pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a member of Diktas Gillen, P.C. We were counsel to Plaintiff/Creditor Bernabe Cabrera ("Plaintiff" or "Cabrera") in the arbitration and litigation between Mr. Cabrera and the Debtor/Defendant, Abel Hernandez ("Debtor" or "Hernandez") more fully described below.

2.    I make this Declaration in support of the Plaintiff's motion for summary judgment to determine that the Debtor either is ineligible for discharge pursuant to 11 U.S.C. §§727(a)(3) and -(a)(5), or, alternatively, that the debt the Debtor owes to the Plaintiff is not dischargeable pursuant to 11 U.S.C. §§523(a)(4) and -(a)(6).

3.    I base this Declaration based upon my personal participation in the three cases filed in the Superior Court of New Jersey which were consolidated in the Chancery Division, Hudson County, under Docket No. HUD-C-155-13, under the consolidated caption *Bernabe Cabrera, individually and derivatively on behalf of Marinero Grill, Inc., Plaintiff vs. Abel Hernandez and Marinero Grill, Inc.*, (collectively "the State Court Litigation"), my personal participation in the related arbitration proceeding conducted pursuant to a consent order entered in the State Court Litigation, and my review of materials filed on the docket in this matter, all as more fully set forth below.

<u>MATERIAL FACTS REGARDING THE NATURE OF THIS ACTION</u>

4.    The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 31, 2017. The case was converted to a case under Chapter 7 of the Bankruptcy Code on November 21, 2017.

5.    On November 16, 2017, the Plaintiff filed a complaint in the above-captioned adversary proceeding ("the Non-Dischargeability Action").

6.    The Non-Dischargeability Action was filed prior to the bar date, which had been extended pursuant to consent of the parties to February 7, 2018.

7.    The Non-Dischargeability Action seeks the following determinations:

A.    That, pursuant to 11 U.S.C. §§523(a)(4) and -(a)(6). the $880,464.01 debt represented by the judgment owed by the Debtor to the Plaintiff, filed as Proof of Claim No. 4 in the Debtor's above-referenced bankruptcy case, arises from the Debtor's

commission of fraud in a fiduciary capacity and other willful, tortious conduct and therefore is not subject to discharge, and/or

    B.  That pursuant to 11 U.S.C. §§ 727(a)(3), and -(a)(5), the Debtor is ineligible for any discharge at all.

MATERIAL FACTS REGARDING PLAINTIFF'S PROOF OF CLAIM

    8.  On March 8, 2017, the Plaintiff obtained a judgment confirming an arbitration award against the Debtor and in favor of Plaintiff in the sum of $880,464.01 ("the "State Court Judgment") entered in the consolidated State Court Litigation.

    9.  The arbitration award and State Court Litigation arose from the parties' various disputes pertaining to a joint business venture in a restaurant known as Marinero Grill, and more particularly arose from what the arbitrator found, and the State Court Judgment confirmed, to be the Debtor's misappropriation of property, mismanagement of, and breaches of fiduciary duty to the Plaintiff and Marinero Grill, Inc. ("MG") when Debtor had sole operational control of MG and Plaintiff was a passive investor.

    10.  The Plaintiff has executed and filed a proof of claim in the Debtor's bankruptcy case (Claim No. 4) (hereinafter "the Proof of Claim") attaching a true copy of the State Court Judgment.

    11.  The Court may take judicial notice of the existence of both the State Court Judgment and the Plaintiff's Proof of Claim in the Debtor's bankruptcy case.

    12.  The arbitration award confirmed by the State Court Judgment was rendered after multiple days of hearing, during which exhibits were marked, testimony taken, witnesses were cross-examined, and both the Plaintiff and the Debtor were represented by counsel.

13. Accompanying this Declaration, and incorporated herein by reference, are are true copies of the relevant pages of the following documents in the record of the arbitration and State Court Litigation:

| Exhibit # | Title or description | Abbreviated[1] as |
|---|---|---|
| A | Transcript of Arbitration hearing 1 (April 27, 2015)[2] | 1T |
| B | Transcript of Arbitration hearing 2 (April 28, 2015) | 2T |
| C | Transcript of Arbitration hearing 4 (May 5, 2015) | 4T |
| D | Transcript of Arbitration hearing 5 (May 5, 2015) | 5T |
| E | Transcript of Arbitration hearing 6 (May 7, 2015) | 6T |
| F | Transcript of Arbitration hearing 8 (May 28, 2015) | 8T |
| G | Transcript of Arbitration hearing 9 (June 15, 2015) | 9T |
| H | Transcript of Arbitration hearing 10 (June 18, 2015) | 10T |
| I | State Court Complaint (*Hernandez v Cabrera*) Dkt, No. HUD-L-853-13 | |
| J | State Court Complaint (*Cabrera v Hernandez*) Dkt. No. HUD-C-155-13 | |
| K | Petrucelli initial certification in *Cabrera v. Hernandez*, HUD-C-155-13 dated November 11, 2013 (also Arbitration Exhibit P-33) | |
| L | May 12, 2014 Case Management Order and Order of Consolidation consolidating *Hernandez v. Cabrera* and *Cabrera v. Hernandez* | |

---

[1] I understand that these exhibits will be referred to, and provide the basis for, a Statement of Material Facts not in dispute and a related brief in support of summary judgment. For easy reference, the exhibits are sometimes referred to in those materials by the abbreviation(s) indicated here.

[2] Because of the volume of pages, and to avoid burdening the Court, only relevant pages of these transcripts are submitted herewith. The full transcripts are available if requested by the Court.

| M | November 5, 2014 Consent Order dismissing *Hernandez v. Cabrera* and *Cabrera v. Hernandez* and referring the issues in the respective complaints to arbitration | Consent Order |
|---|---|---|
| N | Interim Award in the arbitration, December 29, 2015, Hon. Thomas Olivieri, Arbitrator | Interim Award |
| O | Final Award in the arbitration, November 8, 2016, Hon. Thomas Olivieri, Arbitrator | (together with the Interim Award) "Award" |
| P | State Court decision confirming award entered March 8, 2017 | (together with Exhibit R below) State Court Judgment |
| Q | State Court Judgment entered March 8, 2017 | (together with Exhibit P above) State Court Judgment |
| R | March 28, 2014 Report by Monitor to the Court (Arbitration Exhibit P-27) | |
| S | July 21, 2014 Report by Monitor to the Court (Arbitration Exhibit P-29) | |
| T | September 5, 2014 Report by Monitor to the Court (Arbitration Exhibit P-30) | |
| U | November 14, 2014 Report by Monitor to the Arbitrator (Arbitration Exhibit P-31) | |
| V | April 26, 2016, Monitor's Post-Interim Award Report to the Arbitrator | |
| W | Arbitration Hearing Exhibit D-25 Certificate of Formation of River Play LLC | |
| X | Arbitration Hearing P-18, Tab 5, Chart C re additional dissipations of assets | |

14. The State Court Litigation was initiated by the Debtor when he filed suit in New Jersey Superior Court, Law Division, Hudson County, Docket No. HUD-L-853-13

5

(Hernandez v. Cabrera) seeking a declaration that the Debtor owns a 50% membership interest in River Play, LLC.  A copy of that complaint is annexed as Exhibit I hereto.[3]

15. As a result of information developed through discovery conducted in Hernandez v. Cabrera, Plaintiff filed a separate action against the Debtor in the New Jersey Superior Court, Chancery Division, Hudson County, Docket No. HUD-C-155-13, Cabrera v. Hernandez, claiming that the Debtor had mismanaged MG, breached his fiduciary duties to MG and to the Plaintiff, and oppressed the Plaintiff as a MG shareholder.  A copy of Plaintiff's complaint in the State Court Litigation is annexed hereto as Exhibit J.

16. The mismanagement, breaches of fiduciary duty and acts of oppression were documented in the November 11, 2013 supporting certification of Joseph Petrucelli, CPA, a forensic accountant, copy annexed hereto as Exhibit K.

17. As a result of the evidence presented, on December 13, 2013 the Superior Court entered an Order appointing Petrucelli, as a fiscal monitor to oversee the operations of MG (the "Monitor") and continue his investigations and provide reports to the Court, while day-to-day management continued under the control of the Debtor.

18. The Hernandez v. Cabrera and Cabrera v. Hernandez actions, as well as a tenancy action filed by River Play LLC against Marinero Grill Inc for nonpayment of rent, were eventually consolidated in the Superior Court of New Jersey, Chancery Division, Hudson County, with Cabrera's case, Docket No. HUD-L-853-13 designated as the lead case (collectively hereinafter the "Superior Court Litigation").  *See* Case Management and Consolidation Order, annexed hereto as Exhibit L.

---

[3] River Play owns the real property on which the Marinero Grill restaurant is located.  Cabrera maintained, and the Arbitrator later founds, that Cabrera is the sole member of River Play..

6

19. Following his December 13, 2013 appointment, the Monitor had provided reports to the Superior Court regarding the status of his activities. *See e.g.* reports dated March 26, 2014, July 26, 2017 and September 5, 2014, annexed hereto as Exhibits S, T and U respectively.[4]

20. The malfeasance perpetrated under the Debtor's management of MG was corrected only after the Monitor installed compliant tax reporting procedures and generally accepted accounting procedures as described in the foregoing reports. The Monitor also implemented corrective measures to address the financial malfeasance perpetrated by the Debtor. as described in the foregoing reports (Exhibits S, T and U hereto).

21. After achieving compliance and completing corrective measures, the Monitor rendered his final report to the Court dated September 5, 2014. The Court relieved the Monitor of his duties based upon the accomplishment of these goals and the Debtor then resumed operation of MG, no longer subject to supervision.

22. While the Monitor was performing his responsibilities, the parties to the Superior Court Litigation (including Plaintiff and Debtor) agreed to participate in non-binding mediation through the auspices of the Superior Court's ADR program. Pursuant to a case management order dated May 12, 2014, the dispute was referred to the Hon. Thomas P. Olivieri J.S.C. (Ret.) for mediation. *See Exhibit L* hereto.

23. Starting August 8, 2014, the parties to the Superior Court Litigation (including Debtor and Plaintiff) participated in several mediation sessions, but the mediation was unsuccessful.

---

[4] As indicated in the exhibit list above, the initial Petrucelli certification and the subsequent monitor reports were also received in evidence at the arbitration hearing.

24. On November 5, 2014, the Court entered a consent order in the Superior Court Litigation, which dismissed the consolidated actions without prejudice, in favor of binding arbitration (the "Arbitration Proceeding"), copy annexed as <u>Exhibit M</u> hereto   The arbitration was agreed to be binding and to be governed by and conducted in accordance with N.J.S.A. 2A:23B-1, *et seq*. *Id.*

25. In the Consent Order, the parties (including Debtor and Plaintiff) acknowledged that Judge Olivieri had acted as mediator and jointly requested that Judge Olivieri conduct the Arbitration Proceeding, notwithstanding his prior participation as mediator. *Id.*

26. With the parties' consent, Judge Olivieri agreed to serve as the arbitrator for the Arbitration Proceeding.  *Id.*

27. In the Arbitration Proceeding, the Plaintiff was designated petitioner and the Debtor respondent/counterclaimant.

28. As framed by the parties' respective complaints in the State Court Litigation, the issues presented for determination by the Arbitrator were as follows:

   A. Whether the Debtor had "cooked the books" of MG in order to cheat taxing authorities and deprive the Plaintiff of the true value of his 50% interest in MG, thereby breaching the Debtor's fiduciary duties to MG and to the Plaintiff and also oppressing the Plaintiff's rights as a shareholder in MG;

   B. Whether the Debtor had caused MG to fail to pay the rent it owed to River Play; and

   C. Whether the Debtor was entitled to a half interest in River Play.

29. The Arbitration Proceeding was conducted over eleven (11) transcribed hearings held between April and July 2015.

8

30. Throughout the Arbitration Proceeding and until the Arbitrator entered his Interim Award described below, the Debtor continued to exercise exclusive operational control over MG without supervision by the Monitor.

31. The hearings in the Arbitration Proceeding were transcribed, witnesses were sworn to tell the truth and subject to cross-examination, and all exhibits were entered in evidence.

32. The Arbitrator ruled on the admissibility of evidence where objections to admissibility were asserted.

33. The Debtor appeared and personally participated in the Arbitration Proceeding with counsel.

34. The Arbitration Proceeding provided the Parties a full and fair opportunity to litigate all issues.

35. The Debtor had ample opportunity to contest the issues in the Arbitration.

36. The Debtor, the Plaintiff, and the Monitor each testified under oath in the Arbitration Proceeding, and were each subject to cross-examination.

37. The Monitor had provided the Arbitrator with an initial status report dated November 14, 2014, which reflected the Monitor's prior investigative activities, the compliant procedures instituted to correct the accounting practices, and noting the Debtor's return to operational control while the arbitration proceeded. Gillen Dec. Exhibit U.

38. The Monitor later testified as to the financial investigation, reports and findings at the arbitration hearing, establishing the Debtor's prior double-set of books, the resulting tax non-compliance, and the related dissipations perpertrated by the Debtor. *See* Exhibit C hereto, 4T:425-5 to -7, 4T:434-25 to 435-1, 4T:475-13 to -20.

9

39. In his own testimony at the arbitration hearing the Debtor confirmed the Monitor's findings and the Debtor further admitted to having engaged in deliberate financial malfeasance in his management of MG:

40. The Debtor admitted that he knowingly misreported MG's sales to the State tax authority. *See* annexed Exhibit G (9T:1096-12 to -13 and 9T:1098-19) and Exhibit H (10T:1143-2).

41. The Debtor admitted that he knowingly paid MG employees in cash and failed to pay payroll taxes, Exhibit G hereto, 9T:1098-4; and

42. The Debtor further admitted that he purposefully maintained a separate cash ledger which was not reconciled to the "official" books and as a result distorted the MG tax returns, Exhibit G hereto, 9T:1099-20. (Copies of various of the handwritten cash ledger are annexed to Exhibit K hereto.)

43. The evidence at the arbitration hearing showed that between January 2011 and September 2014, the Debtor dissipated, at a minimum, $620,000.00 in MG, which he retained for his own personal use. Exhibit D hereto, 5T:554-8), and Monitor's Reports, Exhibits R, S, T and U hereto. During the same period, the Debtor diverted an additional $16,000.00 of the MG's funds to other entities under his control. Exhibit D hereto, 5T:557-19, and Exhibit X hereto (P- 18, Chart C).

44. The Arbitrator rendered a 42-page Interim Award on December 29, 2015. Exhibit N hereto (hereinafter, the "Interim Award")

45. In the Interim Award, the Arbitrator determined, among other things, the following: (1) River Play LLC was owned solely by Cabrera and Marinero Grill [MG] is owned by Cabrera [Plaintiff] and Hernandez [Debtor] in equal shares; (2) [Debtor] is responsible for

payment of all fees incurred by the court-appointed Monitor; (3) [Debtor] breached fiduciary duties owed to Cabrera, caused damage to Marinero Grill [MG] and misappropriated funds from Marinero Grill; (4) due to unclean hands, [Debtor] is not entitled to prevail on his claims against Cabrera [Plaintiff];  and (6) Cabrera was an oppressed minority shareholder.. As a result of Debtor's malfeasance and breach of fiduciary duties, the Arbitrator's Interim Award removed the Debtor as operator of Marinero Grill effective immediately. *Id.,* Interim Award at 34-40.

46. With particular focus on the Debtor's breach of fiduciary duty, the Arbitrator found that "[Debtor] has breached his fiduciary duty to Cabrera by mismanaging MG and by the appropriation of … funds.  Because of this breach, $849,248 was not properly accounted for or reported.  The Arbitrator accepted "the logical inference that [Debtor] misappropriated the vast amount of this amount." *Id.,* Interim Award at 38-39.

47. The Arbitrator further found that "[Debtor] had caused damage to MG through his shoddy accounting practices.  … [Debtor] underreported sales revenue and the number of employees who worked at MG." *Id.* Interim Award at 39.

48. In concluding that the Debtor had oppressed Cabrera as a minority shareholder in MG, the Arbitrator found that "[Debtor] used faulty accounting methods and misappropriated MG's funds.  He [Debtor] was responsible for the day-to-day operations of MG …." Interim Award at 41.

49. Judge Olivieri requested supplemental filings upon which he could calculate a damage award consistent with his findings.

50. Upon removal of the Debtor as operator of MG by the Arbitrator's Interim Award entered December 29, 2015, Plaintiff assumed control of the restaurant's day-to-day operation, and at the Arbitrator's direction the Monitor conducted an additional forensic

examination to determine what had transpired while the Debtor had been put back into operational control. The Monitor issued a report on April 21, 2016 to update and supplement his prior reports, and reflect transactions through December 31, 2015. Exhibit V hereto. The Monitor concluded that the Debtor had reverted to his old ways, keeping two sets of books and misappropriating funds in the period after the Debtor had resumed day-to-day control from the Monitor. *Id.*

51. On November 8, 2016, the Arbitrator rendered a final decision and award. Exhibit O hereto. (The final decision and award merged with the Arbitrator's Interim Decision and will hereinafter be referred to collectively as "the Award.") The Arbitrator entered the Award in favor of the Plaintiff and against the Debtor in the sum of $876,864.81. *Id.*[5]

52. In issuing the Award, the Arbitrator made findings of fact and stated conclusions of law.

53. The Arbitrator's findings of fact and conclusions of law were stated in the Award and were necessarily determined by the Arbitrator in order to render the Award.

54. The Plaintiff thereafter applied to the Superior Court of New Jersey for confirmation of the Award.

55. On March 8, 2017, the Superior Court entered an decision and judgment (Exhibits P and Q hereto) which:

    A.    Confirmed the Award;

---

[5] The Award also directed the payment of unpaid rent in favor of River Play and against Marinero Grill in the sum of $987,382.30 and an award in favor of the Monitor (Petrocelli) and against the Debtor in the amount of $51,585.59 for fees owed to the Monitor for his services rendered pursuant to court orders.

    B. Determined that additional interest had accrued on the Award in the period since the Award; and

    C. Entered judgment in favor of the Plaintiff and against the Debtor in the sum of $880,464.01 for damages caused by the Debtor's fraud in a fiduciary capacity, misappropriations and defalcations.

  56. In confirming the Award, the Superior Court noted in particular the Debtor's testimony in the course of the arbitration hearing admitting and confirming that he, the Debtor, had: "(1)… knowingly misreported Marinero Grill's sales to the state tax authority; (2) he knowingly paid employees in cash and failed to pay payroll taxes; and (3) he maintained a separate cash ledger that was not reconciled with the corporation's tax returns." Cabrera v. Hernandez, 2017 N.J. Super. Unpub. LEXIS 598, *16-17 (N.J.Super. Ct., Hudson Co., March 8, 2017), <u>Exhibit P hereto</u>.

  57. Judgment on the confirmed award was entered on March 8, 2017 as previously alleged. <u>Exhibit Q hereto</u>.

  58. The Debtor filed a notice of appeal from the Judgment. The appeal was subsequently dismissed without prejudice by the Appellate Division.

 I hereby declare that the foregoing statements are true and correct under penalty of perjury. Executed on March 12, 2018.

              __/s/ Christine Gillen_____
              CHRISTINE GILLEN

13

176687