HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Richard B. Honig, Esq.
Attorneys for Plaintiff, Bernabe Cabrera
One Gateway Center
Newark, New Jersey 07102-5323
973.621.9020

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>ABEL HERNANDEZ,<br><br>Debtor. | Case No.  17-16556-JKS<br><br>Chapter 11 Proceeding<br><br>Judge John K. Sherwood |
| BERNABE CABRERA,<br><br>Plaintiff,<br><br>v.<br><br>ABEL HERNANDEZ,<br><br>Debtor/Defendant. | Adversary Proceeding No. 17-1721 JKS<br><br>Return date: April 3, 2018 at 2:00 p.m. |

**PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT SUBJECT TO GENUINE DISPUTE**

Bernabe Cabrera ("Cabrera " or "Plaintiff"), by his undersigned counsel, in support of his motion for summary judgment to determine that the Debtor/Defendant Abel Hernandez ("Debtor") either is ineligible for discharge pursuant to 11 U.S.C. §§727(a)(3) and -(a)(5), or, alternatively, that the debt the Debtor owes to the Plaintiff is not dischargeable pursuant to 11 U.S.C. §§523(a)(4) and -(a)(6), respectfully submits that the following material facts are established by the record in this case and are not subject to genuine dispute:

## MATERIAL FACTS REGARDING THE NATURE OF THIS ACTION

1. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 31, 2017. The case was converted to a case under Chapter 7 of the Bankruptcy Code on November 21, 2017.

2. On November 16, 2017, the Plaintiff filed a complaint in the above-captioned adversary proceeding ("the Non-Dischargeability Action").

3. The Non-Dischargeability Action was filed prior to the bar date, which had been extended pursuant to consent of the parties to February 7, 2018.

4. The Non-Dischargeability Action seeks the following determinations:

   A. That, pursuant to 11 U.S.C. §§523(a)(4) and -(a)(6). the $880,464.01 debt represented by the judgment owed by the Debtor to the Plaintiff, filed as Proof of Claim No. 4 in the Debtor's above-referenced bankruptcy case, arises from the Debtor's commission of fraud in a fiduciary capacity and other willful, tortious conduct and therefore is not subject to discharge, and/or

   B. That pursuant to 11 U.S.C. §§ 727(a)(3), and -(a)(5), the Debtor is ineligible for any discharge at all.

## MATERIAL FACTS REGARDING JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the District of New Jersey (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) because it concerns the issue of whether the Debtor may receive a discharge from a debt or a general discharge, and thus arises under Title 11 of the United States Code (the Bankruptcy Code).

6. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(J) because it presents an objection to discharge.

7. Venue is proper in the Court pursuant to 28 U.S.C. §1409(a) because this is a proceeding relating to and arising under title 11 of the United States Code, 11 U.S.C. §§101-1532 (as amended the, "Bankruptcy Code" or "Code") and the above-entitled Chapter 11 case.

8. This action is brought as an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

THE RECORD BEARING UPON THE MOTION FOR SUMMARY JUDGMENT

9. In support of summary judgment, the Plaintiff respectfully submits the Declaration of Christine Gillen dated March ___, 2018, which attaches[1] as exhibits relevant pages of the transcripts of proceedings, and hearing exhibits and other pleadings and papers from the State Court Litigation and arbitration proceedings leading to the State Court Judgment referred to below.

10. A full list of the Exhibits to the Gillen Declaration, which defines and lists abbreviations used within this Statement of Material Facts to identify such exhibits, is appended hereto.

MATERIAL FACTS REGARDING PARTIES

11. The Plaintiff is a creditor of the Debtor.

12. On March 8, 2017, the Plaintiff obtained a judgment against the Debtor in the sum of $880,464.01 in an action filed in the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. HUD-C-155-13, styled *"Bernabe Cabrera, individually and derivatively on behalf of Marinero Grill, Inc., Plaintiff vs. Abel Hernandez and Marinero Grill, Inc*.," and two other cases (collectively "the State Court Litigation").  Gillen Dec. Exhibit Q.

---

[1] Owing to the size of the "attached" exhibits, the exhibits have been separately bound and separately efiled in this proceeding.

3

13. The Plaintiff has executed and filed a proof of claim in the Debtor's bankruptcy case (Claim No. 4) (hereinafter "the Proof of Claim") attaching a true copy of the judgment (hereinafter the "State Court Judgment").

14. The Court may take judicial notice of the existence of both the State Court Judgment and the Proof of Claim.

15. Pursuant to Fed.R.Bankr.P. 3001(f), the executed and filed Proof of Claim is prima facie evidence of the validity and amount of the Plaintiff's claim.

## MARINERO GRILL

16. Sometime in the latter half of 2009, the Plaintiff and the Debtor agreed to enter into a joint venture to purchase a defunct restaurant located in West New York, New Jersey. Gillen Dec. Exhibit A, 1T:69:16 to 70:13; Gillen Dec. Exhibit E, 6T:3 to 20; 8T:888-1 to -8; Gillen Dec. Exhibit F, 8T:904-1 to -2.

17. At that time, the Plaintiff was under contract to purchase the real property located at 757-771 Farragut Place, West New York, New Jersey where the defunct restaurant was located. Gillen Dec. Exhibit E, 6T:543-3 to -20; Gillen Dec. Exhibit F, 8T:896-6 to 13. The Plaintiff formed an entity, River Play, LLC, to take title to the property. Gillen Dec. Exhibit E, 6T:657-1 to -10; Gillen Dec. Exhibit W (Certificate of Formation)

18. The Debtor was an experienced restauranteur and told the Plaintiff that he could re-open and operate the restaurant for their mutual interest. The Plaintiff had no restaurant experience and was dependent upon the Debtor to properly manage and operate the restaurant. Gillen Dec. Exhibit A, 1T:69-18 to -24 and 1T:75-18 to -23. Gillen Dec. Exhibit B, 2T:231-6 to -8.

4

19. The Plaintiff and the Debtor agreed that they would each own a one-half ownership interest in the restaurant. Gillen Dec. Exhibit A, 1T:74-13 to -17; Gillen Dec. Exhibit F, 8T:887-21 to 888-8 and 8T:905-6 to -23.

20. The Plaintiff and the Debtor agreed to name the restaurant Marinero Grill ("MG") and formed a corporate entity, Marinero Grill, Inc. which they owned as equal shareholders. Gillen Dec. Exhibit A, 1T:70:1-9 and 1T:70-10 to 13; Gillen Dec. Exhibit F 8T:905-16 to 906:5.

21. During the Debtor's management of MG between 2010 and 2013, the Debtor, among other things, breached his fiduciary duties to Plaintiff and committed numerous violations of law. Without limitation:

    A. The Debtor caused MG to maintain two sets of books which did not reconcile, Gillen Dec. Exhibit C, 4T:429 to -18, one of which recorded cash transactions, *id,*, 4T:439-18 to -20, creating essentially a personal slush fund for the Debtor. (The handwritten ledgers are attached as exhibits to Gillen Dec. K.)

    B. The Debtor directed MG employees to purge historical sales data from the MG computer system so that the data could not be recovered. Gillen Dec. Exhibit C, 4T:433-1 to -20 and 4T:459-24.

    C. To avoid payment of sales tax, the Debtor understated MG's sales revenues to the State of New Jersey and the Internal Revenue Service by $849,248.00. Gillen Dec. Exhibit C, 4T:439-13 and 4T:443-9 to -13. More specifically as ascertained through forensic examination:

        (i) In 2011, the Debtor reported sales of $631,448.00 when actual sales were $919,096.00.

5

      (ii) In 2012, the Debtor reported sales of $645,365.00 when actual sales were $1,016,128.00.

      (iii) In the first and second quarters of 2013, the Debtor reported sales of $299,998.00 when actual sales were $490,736.00; thus

      (iv) Total unreported sales were $849,248.00.

*Id.*

  22. To avoid payment of payroll taxes, the Debtor paid various MG employees in cash. The cash was recorded in the Debtor's personal cash ledger but omitted from MG's "official" books. <u>Gillen Dec. Exhibit C</u>, 4T:440-5 to 17, 4T:440-5 to 17, 4T:440-23.

  23. As a result of the Debtor's conduct, MG had unfunded tax liabilities of $383,508 plus estimated penalties and interest of $139,900. *Id.*

  24. The Debtor admitted in testimony at the arbitration hearings that he knowingly misreported sales to the State tax authority. <u>Gillen Dec. Exhibit G</u>, 9T:1096-12 to -13 and 9T:1098-19; <u>Gillen Dec. Exhibit H</u>, 10T:1143-2.

  25. The Debtor further admitted in his testimony at the arbitration hearings that he knowingly paid employees in cash and failed to pay payroll taxes, <u>Gillen Dec. Exhibit G</u>, 9T:1098-4.

  26. The Debtor further admitted in his testimony that he purposefully maintained a separate cash ledger which was not reconciled to the "official" books and as a result distorted the MG tax returns, <u>Gillen Exhibit G</u>, 9T:1099-20.

  27. The Debtor commenced an action against the Plaintiff in the New Jersey Superior Court, Law Division, Hudson County, Docket No. HUD-L-853-13 (*Hernandez v.*

*Cabrera)*, and sought, among other things, a determination that the Debtor was entitled to a 50% interest in River Play. Gillen Dec. Exhibit I.

28. The Plaintiff filed a separate action against the Debtor in the New Jersey Superior Court, Chancery Division, Hudson County, Docket No. HUD-C-155-13, *Cabrera v. Hernandez,* claiming that the Debtor had mismanaged MG, breached his fiduciary duties to MG and to the Plaintiff, and oppressed the Plaintiff as a MG shareholder. Gillen Dec. Exhibit. J.

29. The *Hernandez v. Cabrera* and *Cabrera v. Hernandez* actions were eventually consolidated in the Superior Court of New Jersey, Chancery Division, Hudson County, with Cabrera's case, Docket No. HUD-L-853-13 designated as the lead case (collectively hereinafter the "Superior Court Litigation"). *See* Case Management and Consolidation Order, Gillen Dec. Exhibit L.

30. The malfeasance perpetrated under the Debtor's management of MG between 2010 and 2013 was uncovered by Joseph Petruccelli, C.P.A., who had been engaged by the Plaintiff to investigate the financial condition of MG in connection with the State Court Litigation. Gillen Dec. Exhibit K. Petrucelli had discovered among other things handwritten ledgers reflecting that the Debtor was maintaining a double-set of books that could not be reconciled with the tax reporting and official books. *Id.* (attaching the Debtor's handwritten ledgers). Petrucelli later testified about his inquiries and the information he had uncovered. Gillen Dec. Exhibit C, 4T:425-5 to -7, 4T:434-25 to 435-1, 4T:475-13 to -20.

31. The Superior Court, Chancery Division entered an order on December 13, 2013, appointing Joseph Petrucelli, C.P.A., as fiscal monitor to oversee the operations of MG (the "Monitor") and provide reports to the Court, while day-to-day management continued under the control of the Debtor.

7

32. Following his appointment, the Monitor provided reports to the Superior Court regarding the status of his activities. *See e.g.* reports dated March 26, 2014, July 26, 2017 and September 5, 2014. Gillen Dec. Exhibits R, S, and T. As shown therein, the Monitor performed a reconciliation of MG's books and records. The Monitor brought MG's tax reporting and accounting procedures into compliance with legal requirements and generally accepted accounting procedures.

33. The information developed by the Monitor and reported to the Court showed that between January 2011 and September 2014, the Debtor had dissipated, at a minimum, $620,000.00 in MG, which he clearly retained for his own personal use. Gillen Dec. Exhibit D, 5T:554-8.

34. During the same period, the Debtor diverted an additional $16,000.00 of the corporation's funds to other entities under his control. *Id.* 5T:557-19; Gillen Dec. Exhibit X (Arbitration Hearing Exhibit P 18, tab 5, Chart C).

35. While the Monitor was performing his responsibilities, the parties to the Superior Court Litigation (including Plaintiff and Debtor) agreed to participate in non-binding mediation through the auspices of the Superior Court's ADR program. The dispute was referred to the Hon. Thomas P. Olivieri J.S.C. (Ret.) for mediation.

36. Starting August 8, 2014, the parties to the Superior Court Litigation (including Debtor and Plaintiff) participated in several mediation sessions, but the mediation was unsuccessful.

37. After the Monitor's final report to the Court of September 5, 2014, the Debtor continued control over MG's operations without supervision.

8

38. On November 5, 2014, the Court entered a consent order in the Superior Court Litigation, which dismissed the consolidated actions without prejudice, in favor of binding arbitration before the Hon. Thomas P. Olivieri, J.S.C. (Ret.) as arbitrator (the "Arbitration Proceeding"). The arbitration was governed by and conducted in accordance with N.J.S.A. 21A:23-B01. *Id.*. Gillen Dec. Exhibit M.

39. In the Consent Order, the parties (including Debtor and Plaintiff) acknowledged that Judge Olivieri had acted as mediator and jointly requested that Judge Olivieri conduct the Arbitration Proceeding, notwithstanding his prior participation as mediator. *Id.*

40. With the parties' consent, Judge Olivieri agreed to serve as the arbitrator for the Arbitration Proceeding. *Id.*

41. In the Arbitration Proceeding, the Plaintiff was designated petitioner and the Debtor respondent/counterclaimant.

42. As framed by the parties' respective complaints in the State Court Litigation, the issues presented for determination by the Arbitrator were as follows:

    A. Whether the Debtor had "cooked the books" of MG in order to cheat taxing authorities and deprive the Plaintiff of the true value of his 50% interest in MG, thereby breaching the Debtor's fiduciary duties to MG and to the Plaintiff and also oppressing the Plaintiff's rights as a shareholder in MG.

    B. Whether the Debtor had caused MG to fail to pay the rent it owed to River Play; and

    C. Whether the Debtor was entitled to a half interest in River Play.

43. During the Arbitration Proceeding and until the Interim Award described below, the Debtor retained operational control over MG.

9

44. The Arbitration Proceeding was conducted over multiple days between April and July 2015.

45. The hearings in the Arbitration Proceeding were transcribed, witnesses were sworn to tell the truth and subject to cross-examination, and all exhibits were entered in evidence and preserved.

46. The Arbitrator ruled on the admissibility of evidence where objections to admissibility were asserted.

47. The Debtor appeared and personally participated in the Arbitration Proceeding with counsel.

48. The Arbitration Proceeding provided the Parties a full and fair opportunity to litigate all issues.

49. The Debtor had ample opportunity to contest the issues in the Arbitration.

50. The Debtor, the Plaintiff, and the Monitor each testified under oath in the Arbitration Proceeding, and were each subject to cross-examination.

51. The Arbitrator rendered a 42-page Interim Award on December 29, 2015. Gillen Dec. Exhibit N (hereinafter, the "Interim Award")

52. In the Interim Award, the Arbitrator determined, among other things, the following: "(1) River Play LLC was owned solely by Cabrera and Marinero Grill [MG] is owned by Cabrera [Plaintiff]and Hernandez [Debtor] in equal shares; (2) [Debtor] is responsible for payment of all fees incurred by the court-appointed Monitor; (3) [Debtor] breached fiduciary duties owed to Cabrera, caused damage to Marinero Grill [MG] and misappropriated funds from Marinero Grill; (4) due to unclean hands, [Debtor] is not entitled to prevail on his claims against

10

Cabrera [Plaintiff]; (5) [Debtor] is to be immediately removed as operator of Marinero Grill; and (6) Cabrera was an oppressed minority shareholder." Interim Award at 38-41.

53. With particular focus on the Debtor's breach of fiduciary duty, the Arbitrator found that "[Debtor] has breached his fiduciary duty to Cabrera by mismanaging MG and by the appropriation of … funds. Because of this breach, $849,248 was not properly accounted for or reported. The Arbitrator accepted the logical inference that [Debtor] misappropriated the vast amount of this amount." Interim Award at 38-39.

54. The Arbitrator further found that "[Debtor] had caused damage to MG through his shoddy accounting practices. … [Debtor] underreported sales revenue and the number of employees who worked at MG." *Id.* at 39.

55. In concluding that the Debtor had oppressed Cabrera as a minority shareholder in MG, the Arbitrator found that "[Debtor] used faulty accounting methods and misappropriated MG's funds. He [Debtor] was responsible for the day to day operations of MG …." Interim Award at 41.

56. Judge Olivieri requested supplemental filings upon which he could calculate a damage award consistent with his findings. At or about this time, the Plaintiff discovered that, after the Monitor had been released from his duties and no longer oversaw MG's books and records, the Debtor abandoned the compliant accounting practices which had been instituted by the Monitor and that the Debtor had instead resumed his prior fraudulent mode of financial operations. Because the Debtor had once again engaged in financially fraudulent accounting procedures, the Arbitrator directed the Monitor to conduct an additional forensic examination be conducted to determine the full extent and disposition of the Debtor's new misappropriations. Pursuant to the Arbitrator's direction, the Monitor conducted a supplemental

11

examination. The Monitor issued a report on April 21, 2016 to update and supplement his prior reports, and reflect transactions through December 31, 2015. Gillen Dec. Exhibit W. The Monitor concluded that the Debtor had reverted to his old ways, keeping two sets of books and misappropriating funds in the period after the Debtor had resumed day-to-day control from the Monitor. *Id.*

57. On November 8, 2016, the Arbitrator rendered a final decision and award. Gillen Dec. Exhibit O. The final decision and award merged with the Arbitrator's Interim Decision and will hereinafter be referred to collectively as "the Award." The Arbitrator entered the Award in favor of the Plaintiff and against the Debtor in the sum of $876,864.81.[2]

58. In issuing the Award, the Arbitrator made findings of fact and stated conclusions of law.

59. The Arbitrator's findings of fact and conclusions of law were stated in the Award and were necessarily determined by the Arbitrator in order to render the Award.

60. The Plaintiff thereafter applied to the Superior Court of New Jersey for confirmation of the Award.

61. On March 8, 2017, the Superior Court entered a decision (Gillen Dec. Exhibit P) and an order and judgment (Gillen Dec., Exhibit Q) which, among other things:

    A.    Confirmed the Award;

    B.    Determined that additional interest had accrued on the Award in the period since the Award;

---

[2] The Arbitrator also entered an award for unpaid rent in favor of River Play and against Marinero Grill in the sum of $987,382.30. The Arbitrator also entered an award in favor of the Monitor (Petrocelli) and against the Debtor in the amount of $51,585.59 for fees owed to the Monitor for his services rendered pursuant to court orders.

      C. Entered judgment in favor of the Plaintiff and against the Debtor in the sum of $880,464.01 for damages caused by the Debtor's fraud in a fiduciary capacity, misappropriations and defalcations.

  62. In confirming the Award, the Superior Court noted in particular the Debtor's testimony in the course of the arbitration hearing admitting and confirming that he, the Debtor, had: "(1)… knowingly misreported Marinero Grill's sales to the state tax authority; (2) he knowingly paid employees in cash and failed to pay payroll taxes; and (3) he maintained a separate cash ledger that was not reconciled with the corporation's tax returns." *Cabrera v. Hernandez*, 2017 N.J. Super. Unpub. LEXIS 598, *16-17 (N.J.Super. Ct., Hudson Co., March 8, 2017), in Gillen Dec. Exhibit P.

  63. Judgment on the confirmed award was entered on March 8, 2017 as previously alleged. Gillen Dec. Exhibit Q.

  64. The Debtor filed a notice of appeal from the Judgment. Subsequently, the Appellate Division dismissed the appeal without prejudice.

        HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
        Attorneys for Creditor Bernabe Cabrera


        By:   /s/ Richard B. Honig
          RICHARD B. HONIG
          A Member of the Firm

Dated: March 13, 2018

**APPENDIX**

<u>EXHIBITS TO CHRISTINE GILLEN DECLARATION</u>

| Exhibit # | Title or description | Abbreviated as |
|---|---|---|
| A | Transcript of Arbitration hearing 1 (April 27, 2015) | 1T |
| B | Transcript of Arbitration hearing 2 (April 28, 2015) | 2T |
| C | Transcript of Arbitration hearing 4 (May 5, 2015) | 4T |
| D | Transcript of Arbitration hearing 5 (May 5, 2015) | 5T |
| E | Transcript of Arbitration hearing 6 (May 7, 2015) | 6T |
| F | Transcript of Arbitration hearing 8 (May 28, 2015) | 8T |
| G | Transcript of Arbitration hearing 9 (June 15, 2015) | 9T |
| H | Transcript of Arbitration hearing 10 (June 18, 2015) | 10T |
| I | State Court Complaint (*Hernandez v Cabrera*) Dkt, No. HUD-L-853-13 | |
| J | State Court Complaint (*Cabrera v Hernandez*) Dkt. No. HUD-C-155-13 | |
| K | Petrucelli initial certification in *Cabrera v. Hernandez,* HUD-C-155-13 dated November 11, 2013 (also Arbitration Exhibit P-33) | |
| L | May 12, 2014 Case Management Order and Order of Consolidation consolidating *Hernandez v. Cabrera* and *Cabrera v. Hernandez* | |
| M | November 5, 2014 Consent Order dismissing *Hernandez v. Cabrera* and *Cabrera v. Hernandez* and referring the issues in the respective complaints to arbitration | Consent Order |
| N | Interim Award in the arbitration, December 29, 2015, Hon. Thomas Olivieri, Arbitrator | Interim Award |

| O | Final Award in the arbitration, November 8, 2016, Hon. Thomas Olivieri, Arbitrator | (together with the Interim Award) "Award" |
|---|---|---|
| P | State Court decision confirming award entered March 8, 2017 | (together with Exhibit R below) State Court Judgment |
| Q | State Court Judgment entered March 8, 2017 | (together with Exhibit P above) State Court Judgment |
| R | March 28, 2014 Report by Monitor to the Court (Arbitration Exhibit P-27) | |
| S | July 21, 2014 Report by Monitor to the Court (Arbitration Exhibit P-29) | |
| T | September 5, 2014 Report by Monitor to the Court (Arbitration Exhibit P-30) | |
| U | November 14, 2014 Report by Monitor to the Arbitrator (Arbitration Exhibit P-31) | |
| V | April 26, 2016, Monitor's Post-Interim Award Report to the Arbitrator | |
| W | Arbitration Hearing Exhibit D-25 Certificate of Formation of River Play LLC | |
| X | Arbitration Hearing P-18, Tab 5, Chart C re additional dissipations of assets | |

174742