UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>ABEL HERNANDEZ,<br><br>Debtor. | Case No.  17-16556-JKS<br><br>Chapter 11 Proceeding<br><br>Judge John K. Sherwood |
| BERNABE CABRERA,<br><br>Plaintiff,<br><br>v.<br><br>ABEL HERNANDEZ,<br><br>Debtor/Defendant. | Adversary Proceeding No. 17-1721 JKS<br><br>Return date: April 3, 2018 at 2:00 p.m. |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT DETERMINING THAT DEFENDANT IS INELIGIBLE
<u>FOR DISCHARGE OR DENYING DISCHARGE AS TO PLAINTIFF'S CLAIM</u>**

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Richard B. Honig, Esq.
Attorneys for Plaintiff, Bernabe Cabrera
One Gateway Center
Newark, New Jersey 07102-5323
973.621.9020

On the Brief:   Matthew E. Moloshok, Esq.
                Richard B. Honig, Esq.

# **TABLE OF CONTENTS**

TOTAL OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF THE CASE AND PRIOR PROCEEDINGS....................................1

LEGAL ARGUMENT....................................................................................................1

I. THE STATE COURT JUDGMENT AND UNDERLYING ARBITRATION
   FINDINGS ARE ENTITLED TO COLLATERAL ESTOPPEL EFFECT IN
   THESE PROCEEDINGS .......................................................................................1

    A. The Issue Decided In The Prior Adjudication Was Identical To Issues
   Presented Here ...........................................................................................2

    B. The Findings Are Final And Binding On The Merits...............................3

    C. The State Court Judgment And Arbitration Gave Debtor A Full And Fair
   Opportunity To Present His Case ..............................................................3

II. BECAUSE THE DEBTOR FAILED TO MAINTAIN ADEQUATE BUSINESS
   RECORDS, HE SHOULD BE DENIED A DISCHARGE PURSUANT TO
   SECTION 727(a)(3) OF THE BANKRUPTCY CODE.........................................5

III. BECAUSE THE DEBTOR CANNOT EXPLAIN HIS LOSS OF AT LEAST
   $849,248 IN ASSETS, HE SHOULD BE DENIED A DISCHARGE
   PURSUANT TO SECTION 727(a)(5) OF THE BANKRUPTCY CODE ......................12

IV. THE DEBTOR'S JUDGMENT DEBT TO PLAINTIFF IS NON-
   DISCHARGEABLE PURSUANT TO SECTION 523(a)(4 OF THE
   BANKRUPTCY CODE BECAUSE IT ARISES FROM THE DEBTOR'S
   FRAUD OR DEFALCATION AS A FIDUCIARY TO PLAINTIFF ............................12

V. THE DEBT IS NON-DISCHARGEABLE UNDER SECTION 523(a)(6) OF THE
   BANKRUPTCY CODE  BECAUSE IT WAS THE RESULT OF THE
   DEBTOR'S "WILLFUL AND MALICIOUS INJURY" TO PLAINTIFF OR
   PLAINTIFF'S PROPERTY................................................................................14

CONCLUSION............................................................................................................16

# TOTAL OF AUTHORITIES

Page(s)

**Cases**

*Aiello v. Aiello (In re Aiello)*,
660 F. App'x 179 (3d Cir. 2016) ........................................................................2, 3

*Albro v. Leonelli-Spina (In re Leonelli-Spina)*,
426 F. App'x 122 (3d Cir. 2011) ...........................................................................2

*Balsamides v. Perle*,
313 N.J.Super. 7, 712 A.2d 673 (App. Div. 1998),
*Aff'd in part, rev'd in part, remanded sub nom,*
*Balsamides v. Protameen Chems., Inc.,* 160 N.J. 352, 734 A.2d 721 (1999).........................13

*Bolivian Air Force v. Tractman*,
107 B.R. 24 (S.D.N.Y. 1989).................................................................................6

*Bondi v. Citigroup, Inc.*,
423 N.J. Super. 377, 32 A.3d 1158 (Super. Ct. App. Div. 2011) .............................................3

*Bullock v. Bank Champaign, N.A.*,
569 U.S. 267 (2013)...........................................................................................14

*Cho v. Tuan (In re Tuan)*,
Nos. 12-19848 (DHS), 12-01520 (DHS),
2013 Bankr. LEXIS 1932 (Bankr. D.N.J. Apr. 26, 2013) ......................................................4

*Chusid v. First Union Nat'l Bank*,
No. 97-4134, 1998 U.S. Dist. LEXIS 479 (E.D.Pa. 1998) ....................................................12

*In re Cook*,
146 B.R. 934 ...................................................................................................12

*Dickinson v. Pohle (In re Pohle)*,
No. 02-01327-rjh7, 2011 Bankr. LEXIS 1087
(Bankr. S.D. Iowa Mar. 21, 2011) ......................................................................11

*In re Frain*,
230 F.3d 1014 (7th Cir. 2000) ...........................................................................13

*Gage v. Rosenbaum(In re Rosenbaum)*,
Nos. 08-43029, 09-4023, 2010 Bankr. LEXIS 1509
(Bankr. E.D. Tex. May 7, 2010) ..........................................................................15

*Greenblatt v. Drexel Burnham Lambert, Inc.*,
    763 F.2d 1352 (11th Cir. 1985) ........................................................................4

*In re Jackson*,
    453 B.R. 789 (Bankr. E.D. Pa. 2011) .............................................................11

*Kasishke v. Frank (In re Frank)*,
    425 B.R. 435 (Bankr. W.D. Mich. 2010)........................................................15

*Lewis v. Short (In re Short)*,
    818 F.2d 693 (9th Cir. 1987) ..........................................................................13

*LSP Inv. P'ship v. Bennett (In re Bennett)*,
    989 F.2d 779 (5th Cir. 1993) ..........................................................................13

*Meridian Bank v. Alten*,
    958 F.2d 1226 (3d Cir. 1982)...............................................................5, 10, 11

*Moschillo v. Jovanov*,
    A-3500-09T2, 2010 N.J. Super. Unpub. LEXIS 3130 at *10, 2010 WL
    5348725 (N.J. Super. Ct. App. Div. Dec. 29, 2010) ......................................13

*Muellenberg v. Bikon Corp.*,
    143 N.J. 168, 669 A.2d 1382 (1996)..............................................................13

*Sabatina v. Novak (In re Novak)*,
    Nos. 15-15102 - ABA, 15-02330 - ABA,
    2016 Bankr. LEXIS 3928 (Bankr. D.N.J. Nov. 7, 2016).................................11

*Seborowski v. Pittsburgh Press Co.*,
    188 F.3d 163 (3d Cir. 1999)..............................................................................1

*SSS Educ., Inc. v. Fisher (In re Fisher)*,
    Nos. 16-12991-ABA, 16-1377-ABA,
    2017 Bankr. LEXIS 213 (Bankr. D.N.J. Jan. 24, 2017) ..............................4, 14

*Stewart Enters. Inc. v. Horton (In re Horton)*,
    621 F.2d 968 (9th Cir. 1980) ..........................................................................11

*Stillwater Liquidating LLC v. Gray (In re Gray)*,
    2016 Bankr. LEXIS 804 (Bankr. S.D.N.Y. Mar. 15, 2016) ..............................6

*United States Tr. v. Kandel (In re Kandel)*,
    Nos. 11-62597, 12-6003, 2015 Bankr. LEXIS 790
    (Bankr. N.D. Ohio Mar. 13, 2015)....................................................................6

*Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128 (Bankr. E.D. Pa. 2008) .........................15

*Wachovia Bank, N.A. v. Spitko (In re Spitko)*,
    357 B.R. 272 (Bankr. E.D. Pa. 2006) ....................................................................................6

**Statutes**

11 U.S.C. § 523(A) ...................................................................................................................12

11 U.S.C. § 523(a)(4)...........................................................................................................12, 13

11 U.S.C. § 523(A)(6)...........................................................................................................14, 15

11 U.S.C. § 727(A)(3)...........................................................................................................5, 6, 11

11 U.S.C. § 727(A)(5)...............................................................................................................12

## PRELIMINARY STATEMENT

Plaintiff Bernabe Cabrera ("Cabrera" or "Plaintiff") submits this brief in support of his motion for summary judgment determining that defendant, Abel Hernandez (hereinafter "Hernandez" or "the Debtor") is ineligible for discharge or denying discharge as to plaintiff's claim (Claim No. 4) filed in the Debtor's above-captioned bankruptcy case.

## STATEMENT OF THE CASE AND PRIOR PROCEEDINGS

In lieu of a separate statement of facts, the Plaintiff relies on the facts drawn from the transcripts and proceedings in the state court and arbitration proceedings described in the accompanying Declaration of Christine Gillen and its exhibits, and summarized in the Statement of Material Facts not subject to genuine dispute ("Indisputable Facts").

Terms and abbreviations used here are defined in the Appendix to the Indisputable Facts and also reproduced as an appendix to this Brief.

## LEGAL ARGUMENT

### I.    THE STATE COURT JUDGMENT AND UNDERLYING ARBITRATION FINDINGS ARE ENTITLED TO COLLATERAL ESTOPPEL EFFECT IN THESE PROCEEDINGS

"Collateral estoppel, also known as issue preclusion, prevents relitigation of a particular fact or legal issue that was litigated in an earlier action. … In order for the doctrine to apply, (1) the issue decided in the prior adjudication must be identical to the one presented in the later action, (2) there must be a final judgment on the merits and (3) the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication and have had a full and fair opportunity to litigate the issue in question in the prior action." *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 169 (3d Cir. 1999) (granting collateral estoppel effect to confirmed labor arbitration award) (citations omitted).

The findings in the Arbitration award, confirmed by the State Court Judgment meet these standards and are entitled to collateral estoppel effect.

**A.    The issue decided in the prior adjudication was identical to issues presented here**

The State Court Judgment and Arbitration award it confirmed established that the Debtor, Hernandez, used Marinero Grill as his personal piggy bank, falsified its and his own business records, did business in cash to hide income and assets from taxing authorities, and otherwise breached his fiduciary duties to his co-venturer, Cabrera.   This Court may and should preclude relitigation of those basic facts, which are substantially identical to the issues presented here.

Discharge is a right or privilege available only to the honest debtor.  Facts proven through the State Court Judgment and Arbitration Award it confirmed establish that the Debtor was guilty of precisely the kinds of dishonest conduct that the Bankruptcy Code establishes as grounds for the denial of a discharge, both a general discharge and a discharge of the debt he Debtor owes to Cabrera.

In this regard, the Third Circuit has repeatedly recognized, that "[a]lthough state courts may not determine dischargeability of a debt*, the principles of collateral estoppel may be applied to discharge exception proceedings to prevent relitigation of relevant issues that have previously been adjudicated by state courts.***"  *Aiello v. Aiello (In re Aiello),* 660 F. App'x 179, 182 (3d Cir. 2016) (emphasis added) (citing *Grogan v. Garner,* 498 U.S. 279, 284n.11 (1991)). *Accord, Albro v. Leonelli-Spina (In re Leonelli-Spina),* 426 F. App'x 122, 125 (3d Cir. 2011). That is precisely the situation here.

### B.    The findings are final and binding on the merits

The findings of the State Court Judgment and the Arbitration award are final in this proceeding because they are final under New Jersey's collateral estoppel doctrine. *Aiello v. Aiello, supra,* 660 F. App'x at 182 (federal courts afford state court judgments the same preclusive effect that would exist in the rendering state). New Jersey's courts give findings supporting judgments collateral estoppel effect; that is so even if the judgment in which the findings were made is on appeal when estoppel is sought. *Id.,* citing, *Gregory Mktg. Corp. v. Wakefern Food Corp.,* 207 N.J. Super. 607, 504 A.2d 828, 836 (1985). *Accord, Bondi v. Citigroup, Inc.,* 423 N.J. Super. 377, 426, 32 A.3d 1158, 1187 (Super. Ct. App. Div. 2011)

### C.    The State Court Judgment and Arbitration gave Debtor a full and fair opportunity to present his case

It is indisputable that the State Court Judgment and Arbitration proceeding involve the exact same parties (The Debtor and Cabrera). The Debtor also indisputably had ample motive to litigate his case fully in those proceedings.

The State Court Judgment and Arbitration allowed the Debtor a full and fair opportunity to present his case. That is true even though the key factual findings were made in the (confirmed) Arbitration Award. That is because

> "… under New Jersey law, determinations made by an arbitrator are entitled to preclusive effect if the proceedings entailed the essential elements of adjudication. *Konieczny v. Micciche,* 305 N.J. Super. 375, 384-85, 702 A.2d 831 (App. Div. 1997) (citing Hernandez *v. Region Nine Hous. Corp.*, 146 N.J. 645, 660, 684 A.2d 1385 (1996)). Thus, New Jersey courts acknowledge the preclusive effect of an arbitration determination when the party to be bound had an ample chance to be heard in the arbitral forum. *Carino v. Allstate Fin. Servs., LLC,* No. A-5717-09T4, 2011 N.J. Super. Unpub. LEXIS 888, 2011 WL 1364150, at *5 (N.J. Super. Ct. App. Div. Apr. 12, 2011) (citing *Panniel v. Diaz,* 376 N.J. Super. 597, 611, 871 A.2d 156 (Law Div. 2004))."

-- *SSS Educ., Inc. v. Fisher (In re Fisher),* Nos. 16-12991-ABA, 16-1377-ABA, 2017 Bankr.

LEXIS 213, at *14-15 (Bankr. D.N.J. Jan. 24, 2017).[1]

      The Arbitration proceedings in the present case afforded the Debtor a full trial

type opportunity to present his case and challenge the case against him.  The arbitrator was a

respected retired Judge of the New Jersey Superior Court Chancery Division.  Uncontested Fact

# 38.  The proceedings were transcribed and all exhibits preserved.  Uncontested Facts ## 44-45.

The Debtor was represented by counsel.  His counsel was able to present witnesses and evidence

and cross-examine witnesses and evidence presented by Cabrera. *Id.* The arbitrator issued a

fully-reasoned interim and final Award.  Uncontested Facts ## 51-55 and 57, and <u>Gillen Dec.</u>

<u>Exhibits N and O.</u> The Debtor already (unsuccessfully) challenged the findings when he

contested confirmation. The Superior Court Judge who issued the final order and State Court

Judgment confirming the Arbitration award gave careful consideration to the quality of the

proceedings below and the accuracy of the facts found.  Uncontested Facts ## 61-63 and <u>Gillen</u>

<u>Dec. Exhibits P and Q.</u>

      Thus, this Court has ample grounds to rely upon the findings made in the State

Court Judgment and Arbitration, and to estop the Debtor by those findings.  *See, e.g., Greenblatt*

*v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1361 (11th Cir. 1985) (granting collateral

estoppel to arbitrator's findings where both parties were represented by counsel, "permitted

every opportunity to examine and cross-examine witnesses and present relevant evidence" and

"[a] complete record of the proceedings (transcript and documents) was preserved.")[2]

---

[1]  Indeed, the *Rooker-Feldman* doctrine bars the Debtor's attempt to contest the findngs made in
the Award which was confirmed by the State Court Judgment.  *SSS Educ., Inc. v. Fisher (In re
Fisher), supra,* 2017 Bankr. LEXIS 213, at *11-12.

[2] *Compare, Cho v. Tuan (In re Tuan),* Nos. 12-19848 (DHS), 12-01520 (DHS), 2013 Bankr.
LEXIS 1932, at *18-19 (Bankr. D.N.J. Apr. 26, 2013) (denying collateral estoppel effect for

If the Court nonetheless were to decide that it will not collaterally estop the

Debtor, the record of the State Court Judgment and Arbitration proceedings already contain

ample *admissions* by the Debtor and other proofs which, as detailed in the sections below,

provide the controlling material facts establishing, beyond any genuine issue of material fact, the

grounds to deny his discharge.

## II.   BECAUSE THE DEBTOR FAILED TO MAINTAIN ADEQUATE BUSINESS RECORDS, HE SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION 727(A)(3) OF THE BANKRUPTCY CODE

Section 727(a)(3) of the Bankruptcy Code provides that a debtor is ineligible for

discharge if "the debtor has … falsified, or failed to keep or preserve any recorded information,

including books, documents, records, and papers, from which the debtor's financial condition or

business transactions might be ascertained, unless such act or failure to act was justified under all

of the circumstances of the case."

Section 727(a)(3)'s purpose is to assure that a debtor's "creditors and the

bankruptcy court receive 'complete and accurate information concerning the status of the

debtor's affairs and to test the completeness of the [debtor's] disclosure require to a discharge."

Hence if creditors stand at "risk of having the debtor withhold or conceal assets 'under cover a

chaotic or incomplete set of books or records,'" discharge must be denied unless the debtor

provides sufficient justification for failure to "maintain and preserve adequate records…"

*Meridian Bank v. Alten,* 958 F.2d 1226, 1229-30 (3d Cir. 1982).

---

arbitration award in a discharge case because the arbitrator's findings "do not conclusively state
that the Defendant breached his fiduciary duty or is guilty of defalcation, the issues at bar," and
no record of the arbitrator's proceedings was available to allow the bankruptcy court to
determine what issues were actually litigated in the arbitration proceeding.).

The records that the Debtor was required to maintain and preserve extends to records of closely-held entities subject to his control. "The statute [11 U.S.C. § 727(a)(3)] is not by its terms limited to records belonging only to debtors or that are property of the estate, but instead the mandate subsumes all records relating to a debtor's financial affairs." *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 307 (Bankr. E.D. Pa. 2006). *Accord, Office of Comptroller General of Republic of Bolivia on behalf of Bolivian Air Force v. Tractman,* 107 B.R. 24, 27 (S.D.N.Y. 1989) ("[S]ection 727(a)(3)'s complete disclosure requirement extends beyond the property of the estate to include all 'business transactions' which shed light on the financial condition of the debtor.") *See also*, *United States Tr. v. Kandel (In re Kandel),* Nos. 11-62597, 12-6003, 2015 Bankr. LEXIS 790, at *27-30 (Bankr. N.D. Ohio Mar. 13, 2015) (noting majority of courts will deny a discharge where debtor has failed to maintain sufficient or accurate business records for a company "substantially intertwined with the debtor." [gathering cases]); *Stillwater Liquidating LLC v. Gray (In re Gray),* 2016 Bankr. LEXIS 804, at *9-10 (Bankr. S.D.N.Y. Mar. 15, 2016) ("failure to keep adequate financial records regarding the business transactions of a closely held corporation that are necessary to determine [a debtor's] personal financial affairs may result in the denial of a discharge.")

Here:

The Debtor was a partner/co-venturer/ co-equal shareholder with Plaintiff in a restaurant, Marinero Grill, Inc. ("MG"). Uncontested Facts ## 16-20.  The Debtor, an experienced restauranteur, was in charge of MG and its books and ran it; Plaintiff was not active in the operation or management and dependent upon Debtor to properly manage and operate the restaurant.  Uncontested Fact #18.

During the Debtor's management of MG between 2010 and 2013, the Debtor, among other things, breached his fiduciary duties to Plaintiff and committed numerous violations of law. Without limitation (as detailed in Uncontested Fact #21), the Debtor caused MG to maintain two sets of books which did not reconcile, Gillen Dec. Exhibit C, 4T:429 to -18, one of which recorded cash transactions. *id,*, 4T:439-18 to -20, creating essentially a personal slush fund for the Debtor.  Further the Debtor directed MG employees to purge historical sales data from the MG computer system so that the data could not be recovered. Gillen Dec. Exhibit C, 4T:433-1 to -20 and 4T:459-24.  And to avoid payment of sales tax, the Debtor understated MG's sales revenues to the State of New Jersey and the Internal Revenue Service by $849,248.00. Gillen Dec. Exhibit C, 4T:439-13 and 4T:443-9 to -13; Gillen Dec. Exhibit K (Initial Petrucelli Certification).  Thus, as ascertained through forensic examination:  (i) in 2011, the Debtor reported sales of $631,448.00 when actual sales were $919,096.00; (ii) in 2012, the Debtor reported sales of $645,365.00 when actual sales were $1,016,128.00; (iii) in the first and second quarters of 2013, the Debtor reported sales of $299,998.00 when actual sales were $490,736.00; and so (iv) the total unreported sales were $849,248.00.  Id., Uncontested Fact #21C.

To avoid payment of payroll taxes, the Debtor paid various MG employees in cash.   The cash was recorded in the Debtor's personal cash ledger but omitted from MG's "official" books.  Uncontested Fact #22, Gillen Dec. Exhibit C, 4T:440-5 to 17, 4T:440-5 to 17, 4T:440-23.  As a result of the Debtor's conduct, MG had unfunded tax liabilities of $383,508 plus estimated penalties and interest of $139,900. Uncontested Fact #23.

***In his own testimony at the arbitration hearing the Debtor admitted*** that he knowingly misreported sales to the State tax authority.  Uncontested Fact # 24, Gillen Dec.

Exhibit G, 9T:1096-12 to -13 and 9T:1098-19; Gillen Dec. Exhibit H, 10T:1143-2.  In his

testimony, the Debtor further *admitted* that he knowingly paid employees in cash and failed to

pay payroll taxes.  Uncontested Fact # 25, Gillen Dec. Exhibit G, 9T:1098-4.

   The Debtor also *admitted* in his testimony that he purposefully maintained a

separate cash ledger which was not reconciled to the "official" books and as a result distorted the

MG tax returns.  Uncontested Fact # 26, Gillen Exhibit G, 9T:1099-20. The malfeasance

perpetrated under the Debtor's management of MG between 2010 and 2013 was corrected only

after it was uncovered by Joseph Petruccelli, C.P.A., who had been engaged by the Plaintiff to

investigate the financial condition of MG. (Petruccelli was later appointed as Monitor by the

Superior Court of New Jersey and implemented corrective measures in that capacity.)

Uncontested Fact #30 Gillen Dec. Exhibit C, 4T:425-5 to -7, 4T:434-25 to 435-1, 4T:475-13

to  - 20.

   The Debtor's machinations enabled the Debtor to dissipate, between January 2011

and September 2014, at a minimum, $620,000.00 from MG, which he clearly retained for his

own personal use.  Uncontested Fact #33, Gillen Dec. Exhibit F (5T:554-8), And during the

same period, the Debtor diverted an additional $16,000.00 to other entities under his control.  *see*

Gillen Dec. Exhibit F, 5T:557-19; Gillen Dec. Exhibit X (P-18, tab 5, Chart C).

   The Arbitrator took all these facts into account in rendering an Interim Award on

December 29, 2015.  Gillen Dec. Exhibit P (hereinafter, the "Interim Award"), which became

part of the final Award.  The Arbitrator determined, among other things, the following:

"(1) River Play LLC was owned solely by Cabrera and Marinero Grill [MG] is owned by

Cabrera  [Plaintiff]and Hernandez [Debtor] in equal shares; (2) [Debtor] is responsible for

payment of all fees incurred by the court-appointed Monitor; (3) [Debtor] breached fiduciary

duties owed to Cabrera, caused damage to Marinero Grill [MG] and misappropriated funds from Marinero Grill; (4) due to unclean hands, [Debtor] is not entitled to prevail on his claims against Cabrera [Plaintiff]; (5) [Debtor] is to be immediately removed as operator of Marinero Grill; and (6) Cabrera was an oppressed minority shareholder." Interim Award at 38-41.

With particular focus on the Debtor's breach of fiduciary duty, the Arbitrator found that "[Debtor] has breached his fiduciary duty to Cabrera by mismanaging MG and by the appropriation of … funds. Because of this breach, $849,248 was not properly accounted for or reported. The Arbitrator accepted the logical inference that [Debtor] misappropriated the vast amount of this amount." Interim Award at 38-39.

The Arbitrator further found that "[Debtor] had caused damage to MG through his shoddy accounting practices. … [Debtor] underreported sales revenue and the number of employees who worked at MG." *Id.* at 39.

In concluding that the Debtor had oppressed Cabrera as a minority shareholder in MG, the Arbitrator found that "[Debtor] used faulty accounting methods and misappropriated MG's funds. He [Debtor] was responsible for the day to day operations of MG …." Interim Award at 41.[3]

As discussed in Point I above, each of the findings made by the Arbitrator as part of the Award may be given collateral estoppel effect in this proceeding. The Arbitrator's findings establish that the Debtor falsified records, failed to maintain accurate records, and failed

---

[3] The Debtor was, moreover, a recidivist. The court-appointed Monitor had instituted compliant accounting practices which the Debtor was supposed to continue to comply with during the arbitration. But after the Interim Award, in which the Arbitrator determined that the Debtor could not be trusted with management, it emerged that the Debtor had returned to his fraudulent accounting practices throughout the arbitration. *See* Uncontested Fact ## 56, Gillen Dec. Exh. V (Monitor's April 26, 2016 report), Gillen Dec. Exh. O (Final Award).

to preserve records from which his affairs could be traced.  The Arbitrator's findings further establish that the Debtor lacked any justification for his conduct, necessitating a denial of his discharge.

But even if the Court declined for some reason to provide collateral estoppel effect to the Award, the incontrovertible admissions made by the Debtor, as well as the evidence presented demonstrate the Debtor's failure to maintain and preserve adequate records -- indeed, that the Debtor grossly falsified MG's records making it the Debtor's burden to establish justification for his falsifications and inadequate record keeping.  *Meridian Bank v. Alten, supra,* 958 F.2d at 1233 (a creditor need only make "an initial showing that the debtor's records are inadequate; thereafter the burden is on the debtor to prove justification.")  It is clear that the Debtor cannot justify his conduct.

The Debtor, by his own testimony, admitted that he kept a double set of books. Uncontested Fact # 26, Gillen Dec. Exh. G, 9T:1066-20.  In contrast to simple negligence or sloppiness, that kind of deliberate fraudulent record manipulation is entirely inexcusable.  It is particularly disturbing from the Debtor, who had years of experience in the restaurant business, operating multiple establishments.  By reason of his experience, the Debtor should be charged with a high degree of responsibility to keep accurate records:

> "The Third Circuit has stated, 'sophisticated business persons are generally held to a high level of accountability in recordkeeping.' *Meridian Bank v. Alten,* 958 F.2d at 1231. Several courts have found a debtor's operation of a business as an important factor in determining its sophistication. *See In re Kinard,* 518 B.R. 290, 304-05 (Bankr. E.D. Pa. 2014) (finding that the debtor may lack some business acumen, but that she operated and managed the business with her mother or her brother, and because the company would have been required to maintain financial records so that it could file tax returns every year, the debtor must be knowledgeable regarding the importance of maintaining and preserving financial records)."

*Sabatina v. Novak (In re Novak),* Nos. 15-15102 - ABA, 15-02330 - ABA, 2016 Bankr. LEXIS
3928, at *16 (Bankr. D.N.J. Nov. 7, 2016). *See also, Stewart Enters. Inc. v. Horton (In re
Horton*), 621 F.2d 968, 972 (9th Cir. 1980) ("would belie logic and common sense not to
consider [debtor's] familiarity with the bankruptcy laws to support a general inference that the
failure to keep records was not accidental.")

        It is particularly egregious that the Debtor maintained a separate set of cash books
for the business, while at the same time cash from the business disappeared and is not reflected
in any way in the Debtor's personal records -- that is why the missing $849,248 remains
unaccounted for.  It is entirely appropriate to deny Hernandez's discharge in those
circumstances. *Sabatina v. Novak (In re Novak),* Nos. 15-15102 - ABA, 15-02330 - ABA, 2016
Bankr. LEXIS 3928, at *9 (Bankr. D.N.J. Nov. 7, 2016) (denying discharge where debtor failed
to maintain sufficient records for closely-held home improvement business); *Dickinson v. Pohle
(In re Pohle*), No. 02-01327-rjh7, 2011 Bankr. LEXIS 1087, at *9 (Bankr. S.D. Iowa Mar. 21,
2011) (denying discharge to restauranteur who regularly conducted business in cash and failed to
maintain adequate personal or business records.)  Once the source of a significant portion of the
debtor's income is thus tainted by falsified data, it draws into question all of the debtor's
recordkeeping. *See, In re Jackson,* 453 B.R. 789 (Bankr. E.D. Pa. 2011) (discharge denied under
section 727(a)(3) where debtor, president of closely held corporation, produced only a five-year-
old federal corporate income tax return and the company's incomplete bank statements).  *See
also, Meridian Bank v. Alten, supra* (affirming denial of discharge where debtors "openly
acknowledged their intent to transact business solely in cash in order to avoid creditors levying
on their assets.")

III.   **BECAUSE THE DEBTOR CANNOT EXPLAIN HIS LOSS OF AT LEAST
$849,248 IN ASSETS, HE SHOULD BE DENIED A DISCHARGE PURSUANT
TO SECTION 727(A)(5) OF THE BANKRUPTCY CODE**

Section 727(a)(5) of the Bankruptcy Code requires the Court to deny a discharge

to a debtor if "if the debtor has failed to explain satisfactorily, before determination of denial of

discharge under this paragraph, any loss of assets or deficiency of assets to met the debtor's

liabilities."  A creditor need only show that the debtor has lost or failed to account for a

substantial amount of assets.  The burden then shifts to the debtor to explain the loss.  *Chusid v.

First Union Nat'l Bank,* No. 97-4134, 1998 U.S. Dist. LEXIS 479, *11 (E.D.Pa. 1998).  *See, id.*

(affirming denial of discharge where debtor could not provide adequate financial records and

failed to satisfactorily explain disposition of $500,000 of income); *In re Cook*, 146 B.R. 934, 942

(debtor failed to explain what happened to $675,000 in funds received during the two year period

prior to bankruptcy filing).

Here, the Debtor failed to account for $849,248 in cash misappropriated from

MG.  The Debtor's disposition of these funds has never been documented or adequately

explained.  *See* Interim Arbitrator's Interim Award at 38-39 (accepting the logical inference that

Debtor pocketed the vast majority of those funds.).

IV.   **THE DEBTOR'S JUDGMENT DEBT TO PLAINTIFF IS NON-
DISCHARGEABLE PURSUANT TO SECTION 523(A)(4 OF THE
BANKRUPTCY CODE BECAUSE IT ARISES FROM THE DEBTOR'S
FRAUD OR DEFALCATION AS A FIDUCIARY TO PLAINTIFF**

Section 523(a)(4) of the Bankruptcy Code excepts from a discharge of any

individual debtor a debt which arises from a debtor's "fraud or defalcation while acting in a

fiduciary capacity …."

The relationship of one shareholder in a closely-held corporation, much like that

of partners in a partnership and joint venturers between themselves, has been repeatedly held to

be a fiduciary relationship. *See, e.g., Muellenberg v. Bikon Corp.*, 143 N.J. 168, 181, 669 A.2d

1382, 1388 (1996) (shareholder exercising managerial control of closely held entity owes

fiduciary duties to the other shareholders); *Balsamides v. Perle*, 313 N.J.Super. 7, 14, 712 A.2d

673 (App. Div. 1998) (where each shareholder had a 50% interest in a close corporation they

"owe each other substantially the same fiduciary duty of good faith and loyalty as that owed by

partners in a partnership")[4]; *Moschillo v. Jovanov*, A-3500-09T2, 2010 N.J. Super. Unpub.

LEXIS 3130 at *10, 2010 WL 5348725 (N.J. Super. Ct. App. Div. Dec. 29, 2010) ("coequal

shareholders in a closely held corporation owe each other a fiduciary duty similar to that of a

partnership.").

       Many courts have ruled that partners, joint venturers and shareholders in closely-

held corporations, such as the Debtor and Cabrera, stand in a "fiduciary capacity" within the

meaning of Section 523(a)(4). *See, e.g. LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779,

789 (5th Cir. 1993) (discharge properly denied under section 523(a)(4) because managing

partner owes limited partners fiduciary duties); *In re Frain*, 230 F.3d 1014, 1017-18 (7th Cir.

2000) (while having day-to-day control in itself would not give rise to fiduciary capacity under

523(a)(4), shareholder's "substantial ascendancy" over two other shareholders including control

of its books and cash did establish "fiduciary capacity"); *Lewis v. Short (In re Short),* 818 F.2d

693, 696 (9th Cir. 1987) (denying discharge where the debtor "had a duty to act as trustee for the

affairs of the joint venture.")

       Other than his interest as a shareholder, Cabrera was not involved in the

management of MG; the Debtor was its active manager.  The Debtor ran the business day-to-day

---

[4]  *Aff'd in part, rev'd in part, remanded sub nom, Balsamides v. Protameen Chems., Inc.,* 160
N.J. 352, 734 A.2d 721 (1999) (the appeal to the Supreme Court addressed issues of valuation
remedy only).

and oversaw maintenance of its books and records. Cabrera reasonably expected that the Debtor

would operate MG in an honest manner -- certainly not create a double set of books, that would

be used to siphon cash out of the business for the Debtor's personal benefit while defrauding

Cabrera and taxing authorities.

Cabrera suffered a tangible economic loss as a result of the Debtor's deliberate

defalcation. *See, Bullock v. Bank Champaign, N.A.,* 569 U.S. 267 (2013). MG could have been

a successful business and Plaintiff, to whom Debtor owed his fiduciary duties, would not have

suffered loss but for the Debtor's misconduct. Accordingly, as a matter of law, Cabrera's claim

is non-dischargeable.

## V.    THE DEBT IS NON-DISCHARGEABLE UNDER SECTION 523(A)(6) OF THE BANKRUPTCY CODE  BECAUSE IT WAS THE RESULT OF THE DEBTOR'S "WILLFUL AND MALICIOUS INJURY" TO PLAINTIFF OR PLAINTIFF'S PROPERTY

A debt "for willful and malicious injury by the debtor to another entity or to the

property of another entity" cannot be discharged. 11 U.S.C. § 523(a)(6). Here, the State Court

Judgment and Arbitration award found, and the underlying facts also show, that the Debtor

willfully, intentionally and maliciously diverted cash from MG, oppressed Plaintiff's rights in

MG and thereby damaged Plaintiff and Plaintiff's property (Plaintiff's interest as the only other,

50%, owner of MG). Actions are "willful and malicious" if they involve "deliberate action that is

substantially certain to produce harm," such as if an actor "purposefully inflicts injury or acts in

such a manner that he is substantially certain that injury will result." *SSS Educ., Inc. v. Fisher (In

re Fisher)*, Nos. 16-12991-ABA, 16-1377-ABA, 2017 Bankr. LEXIS 213, at *20-21 (Bankr.

D.N.J. Jan. 24, 2017) (citations and internal quotations omitted).

The facts speak for themselves:  a person who deliberately creates a second set of

books, knows that he is engaged in willfully wrongful conduct. A person who hides cash from

his business partner, is clearly engaged in willful and malicious conduct.  Loss of more than
$800,000 in cash, and additional damage to the enterprise's value of MG, certainly amounts to
injury to Plaintiff's property -- Plaintiff's interest in MG.

      Bankruptcy courts consistently hold that debts arising from shareholder
oppression --particularly where, as here, the debt arose in substantial part from the dominant
shareholder's conversion of corporate assets -- are ineligible for discharge under Section
523(a)(6) of the Bankruptcy Code and, in doing so, give collateral estoppel effect to state court
determinations that oppression has occurred  *See, Kasishke v. Frank (In re Frank),* 425 B.R. 435,
443 (Bankr. W.D. Mich. 2010) (holding "the [state court] Judgment necessarily determined that
Mr. Frank diverted Landtec's money …for his own benefit, at the expense of Landtec and Mr.
Kasishke. Conversion of property clearly falls within the misdeeds contemplated in 11 U.S.C. §
523(a)(6)… that Judgment is entitled to issue-preclusive effect, and warrants a declaration from
this court that the debt represented by the Judgment should be excepted from discharge under 11
U.S.C. § 523(a)(6)."); *Gage v. Rosenbaum(In re Rosenbaum),* Nos. 08-43029 (Chapter 7), 09-
4023, 2010 Bankr. LEXIS 1509, at *36-37 (Bankr. E.D. Tex. May 7, 2010) (where debtors
withdrew money from closely-held entity for their benefit to the exclusion of the only other
owner, conduct was willful and malicious under § 523(a)(6)); Viener v. Jacobs (In re Jacobs),
381 B.R. 128, 147 (Bankr. E.D. Pa. 2008) (based on state court's findings that Debtor's conduct
was at a minimum, "substantially certain to injure [creditor's] property interest in [their closely-
held entities]" creditor entitled to summary judgment determining debt nondischargeable under
11 U.S.C. §523(a)(6)).

      In the instant matter, the State Court Judgment confirmed the Arbitration award
which specifically found that oppression occurred.  That determination must be given preclusive

effect, entitling the Plaintiff, Cabrera, to summary judgment, determining that his claim is non-dischargeable.

## <u>CONCLUSION</u>

The egregious conduct of the Debtor in manufacturing falsified books, failing to account (or provide records from which a trustee could account) for his loss of assets, and breaching his fundamental fiduciary responsibilities to his co-venturer, Cabrera, justify the denial of the Debtor's discharge, or at a minimum that the Debtor be denied a discharge of his debt to Cabrera.

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff, Bernabe Cabrera


By: _____/s/ Richard B. Honig_____
                    RICHARD B. HONIG
                    A Member of the Firm


Dated:      March 13, 2018

16

175072