**SCURA, WIGFIELD, HEYER**
**STEVENS & CAMMAROTA, LLP**
1599 Hamburg Turnpike
Wayne, New Jersey 07470
Tel.: 973-696-8391
David L. Stevens (Attorney ID 034422007)
*Counsel to Defendant Abel Hernandez*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ABEL HERNANDEZ,<br><br>      DEBTOR.<br><br>―――――――――――――<br><br>BERNABE CABRERA,<br><br>      PLAINTIFF,<br><br>V.<br><br>ABEL HERNANDEZ<br><br>      DEFENDANT. | Case No. 17-16556 (JKS)<br><br>Chapter 7<br><br>Honorable John K. Sherwood<br><br>Adv. Pro. No.: 17-01721 (JKS)<br><br>Hearing Date: April 17, 2016 at 2:00 p.m. |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

**SCURA, WIGFIELD, HEYER**
**STEVENS & CAMMAROTA, LLP**
David L. Steven, Esq.
(Attorney ID: 034422007)
1599 Hamburg Turnpike
Wayne, New Jersey 07470
Telephone: (973) 696-8391
Facsimile: (973) 696-8671
Counsel to the Defendant Abel Hernandez

On the brief:
**David L. Stevens**

## PRELIMINARY STATEMENT

Abel Hernandez (the "Defendant") files this Opposition to Bernabe Cabrera's (the "Plaintiff") Motion for Summary Judgment in accordance with Federal Rules of Civil Procedure Rule 56 made applicable through Title 11 of the U.S. Code (the "Bankruptcy Code") and Bankruptcy Rules of Federal Procedure Rule 7056.  The Plaintiff in this matter, initiated an adversary proceeding by filing a complaint on November 16, 2017 to Determine the Non-Dischargeability of the Plaintiff's Claim and/or Denial of Discharge pursuant to 11. U.S.C. § 523(a)(4) and 11. U.S.C. § 523 (a)(6) to determine that the $880,464.01 judgment against the Defendant is not subject to discharge, and/or that pursuant to 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5), the Debtor is ineligible for any discharge at all.

In the Plaintiff's motion for summary judgment (the "Motion"), Plaintiff alleges that his claim is entitled to non-dischargeability due to an arbitrator's logical inference that the Debtor misappropriated funds from a restaurant that was co-owned by the Debtor and the Plaintiff. Although Plaintiff relies on the arbitrator's findings that the Debtor misappropriated funds, it fails to provide evidence that the Debtor had the requisite scienter to prove that the Debtor intended to misappropriate funds for his own personal gain with the overall intent to economically injure the Plaintiff.

In addition, Plaintiff's pre-discovery motion for summary judgment should be denied as premature.  Determining a debtor's right to discharge is one of the gravest duties of a Bankruptcy Court. This Court should not grant summary judgment before affording the Defendant a fair opportunity for discovery on questions of fact that are material to the Plaintiff's claim.

Plaintiff relies on facts from a pre-bankruptcy state court proceeding to pass judgment on the debtor's post-bankruptcy behavior.  Indeed, even if the Defendant was unable to adequately

explain his financial affairs before this bankruptcy case commenced, it is improper to assume he is unable to fulfill the duty of full disclosure and explanation now.

Plaintiff files this Motion, supported by self-serving statements or alternative facts that are being passed off as undisputed facts in an effort to confuse this Court and muddle the issues. Plaintiff's Motion must fail because genuine issues of material fact exist as to the details essential to each of the Plaintiff's non-dischargeability claims.

Accordingly, Defendant respectfully requests that this Court deny the Plaintiff's Motion in its entirety. Summary judgment is inappropriate because there are unresolved arguments and disputes of fact germane to the current action.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§1334(b), 157(a) and 157(b)(1).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  Venue is proper in this District under 28 U.S.C. § 1409(a).

## STATEMENT OF FACTS

The Defendant incorporates his Counterstatement to Plaintiff's Statement of Material Facts not in Dispute, Defendant's Statement of Material Facts not in Dispute, and the Certification of Abel Hernandez, in opposition to Plaintiff's Motion for Summary Judgment, as if fully set forth herein.

# ARGUMENT
## POINT I

**PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS A RATIONAL JURY COULD FIND THERE ARE GENUINE DISPUTES OF FACT WITH RELATION TO THE PLAINTIFF'S CONTENTION THAT DEFENDANT FAILED TO KEEP ADEQUATE BUSINESS RECORDS; FAILED TO GIVE AN ADEQUATE EXPLANATION AS TO THE FUNDS IN QUESTION; OR THAT THE DEBTOR INTENTIONALLY MISAPPROPRIATE FUNDS TO AVOID THE PAYMENT OF SALES AND PAYROLL TAXES, AND INTENTIONALLY INJURE THE PLAINTIFF, ALL WHICH ARE ESSENTIAL FACTS NECESSARY TO THE PLAINTIFF'S NON-DISCHARGEABILITY ACTION PURSUANT TO §§ 523(a)(4), 523(a)(6), 727(a)(3), and 727(a)(5)**

## A. APPLICABLE STANDARD

Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law[.]' A factual dispute is 'genuine' if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." *Brangman v. AstraZeneca*, F.Supp.2d 710, 720 (E.D.Pa. 2013) quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "After the moving party has met its initial burden, the adverse party's response 'must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." *Taggart v. Wells Fargo Home Mortgage, Inc.,* 2013 WL 3009730, at 2 (E.D.Pa. June 18, 2013) citing (Fed.R.Civ.P. 56(e)(2)). In deciding a motion for summary judgment, the court must construe the facts and inferences in the "light most

favorable to the non-moving party." *Toll Brothers, Inc. v. Century Surety Co.,* 2013 WL 3009721,

at 4 (E.D.Pa. June 17, 2013). The court's role is not to weigh the evidence, but only to decide

"whether there is a disputed, material fact for determination at trial." *Gray v. Jackson (In re*

*Jackson),* 453 B.R. 789, 795 (Bankr.W.D.Pa.2011). "To defeat a motion for summary judgment,

a nonmoving party must show that there is more than merely 'a scintilla of evidence,' supporting

his position or some metaphysical doubt as to the material facts." *Spangler v. City of*

*Philadelphia,* 523 Fed.Appx. 142, 145 (3d Cir.2013) (citations omitted). In *Murray v. JELD–*

*WEN, Inc.,* 2013 WL 126323 (M.D.Pa. January 9, 2013), the district court observed the following:

> Our circuit has stated: "... summary judgment is essentially 'put up or shut
> up' time for the non-moving party; the non-moving party must rebut the
> motion with facts in the record and cannot rest solely on assertions made in
> the pleadings, legal memoranda, or oral argument."
>
> *Id.* at 2 quoting *Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

 Furthermore, Summary judgment is a drastic device and should not be granted when one

party has yet to exercise its opportunities for pretrial discovery pursuant to Fed. R. Civ. P. 56(d).

Summary judgment should ordinarily be entered only after there has been given "adequate time

for discovery*." Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Info. Handling Servs., Inc*., 338 F.3d at 1032.  "The court must give a

party opposing summary judgment an adequate opportunity to obtain discovery." *Radich v. Goode*,

886 F.2d 1391, 1391 (3d Cir.1989) (citing *Dowling v. Philadelphia*, 855 F.2d 136, 139 (3d

Cir.1988)). Courts have noted that pre-discovery summary judgment motions are premature and

should only be used for exceptional circumstances. *Patton v. Gen. Signal Corp*., 984 F.Supp. 666,

669 (W.D.N.Y 1997).

In the instant case, no such "exceptional circumstances" are present here. Clearly, this case

is in its infancy, and the pleadings already raise a host of factual issues.  The Plaintiff has the

burden to demonstrate proof that the Defendant cannot explain his financial affairs and that the Defendant intentionally misappropriated funds from a restaurant that was co-owned by the Defendant and the Plaintiff.  Yet, there has been no depositions, no interrogatories exchanged, or requests for admissions. The Defendant has truthfully disclosed all of his assets, income, and liabilities in his petition schedules.  He has testified at multiple Creditors' Meetings and answered all questions posed to him.  There has never been any assertion that the Defendant has not been able to explain his financial affairs or has been anything but cooperative and transparent since this bankruptcy was filed. And notably, the chapter 7 trustee has not joined in this motion.

The facts in this adversary proceeding, as they relate to the Plaintiff's claims for non-dischargeability, are in dispute and the Plaintiff is not entitled to judgment in its favor as a matter of law.

**B. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER THE DEFENDANT WHILE IN A FIDUCIARY CAPACITY MISAPPROPRIATED FUNDS INTENTIONALLY, KNOWINGLY OR WITH A CONSCISCIOUS DISREGARD PURSUANT TO SECTION 523(a)(4) AND RELEVANT CASE LAW**

**i.    The Debtor Does Not Contest that as a Shareholder of Marinero Grill He is Under a Fiduciary Capacity**

Section 523(a)(4) provides, *inter alia,* that an individual debtor may not be discharged from a debt that arises from a fraud or defalcation while acting in a fiduciary capacity. *In re Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008). To succeed under this part of the statute, a plaintiff must prove (i) a fiduciary relationship and (ii) that a fraud or defalcation occurred while the defendant acted in a fiduciary capacity. *Id.*; *see also In re Guarracino*, 575 B.R. 298, 311 (Bankr. D.N.J. 2017); *In re Nader*, 11-13042 DHS, 2012 WL 1614856, at 5 (Bankr. D.N.J. May 9, 2012); *In re Tyson*, 450 B.R. 514, 522 (Bankr. E.D. Pa. 2011).

A fiduciary relationship is often "limited to instances involving express or technical trusts." *New In re Kaczynski*, 188 B.R. 770, 773 (Bankr. D.N.J. 1995). Other courts have found that state common law can create the requisite fiduciary relationship. *In re Guarracino*, 575 B.R. at 311 citing *In re Librandi*, 183 B.R. 379, 382 (M.D. Pa. 1995). However, "[n]otwithstanding the differences in the means of establishing these two types of trusts, the scope of technical and express trusts is 'not limited to trusts that arise by virtue of a formal trust agreement but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *Id*.

Court have interpreted "fraud" for purposes of § 523(a)(4) as involving intentional deceit, rather than implied or constructive fraud. *In re Truch*, 508 B.R. 616, 624–25 (Bankr. D.N.J. 2014) citing *In re Tyson*, 450 B.R. 514, 522 (Bankr. E.D. Pa. 2011).

Here, the Debtor does not contest that he owed a fiduciary duty to the Plaintiff as 50% owner of Marinero Grill. However, the Debtor refutes the Plaintiff's claims that there was a breach of a fiduciary duty by fraud or defalcation.

ii.    **Summary Judgment for Non-Dischargeability of Debt Pursuant to Section 523(a)(4) Cannot be Granted in Favor of the Plaintiff Because the Plaintiff did not Demonstrate Sufficient Evidence to Support the Argument that the Defendant Intentionally, Knowingly, or with a Conscious Disregard, Defalcated Funds While in Fiduciary Capacity**

The meaning of the term "defalcation" is a matter of federal law. *In re Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008) citing *In re Johnson,* 691 F.2d 249, 254 (6th Cir.1982) ("Federal, not state law controls our determination because it is the intent of Congress in using the word 'defalcation' that we seek to discover."). Defalcation in this context means the failure to produce funds entrusted to a fiduciary. *In re Truch*, 508 B.R. at 625. Until recently, courts were divided as to whether an innocent mistake counted or whether the debtor had to have scienter. *Id*.

The Supreme Court has now clarified that defalcation under § 523(a)(4) requires "a

culpable state of mind" with a "knowledge of, or gross recklessness in respect to the improper

nature of the relevant fiduciary behavior". *In re Truch*, 508 B.R. at 625. citing *Bullock v.*

*BankChampaign, N.A.*, 569 U.S. 267 (2013).

In *Bullock*, the Supreme Court noted:

> "Where the conduct at issue does not involve bad faith, moral turpitude, or other
> immoral conduct, the term requires an <u>intentional</u> wrong. We include as
> intentional not only conduct that the fiduciary knows is improper but
> also reckless conduct of the kind that the criminal law often treats as the equivalent.
> Thus, we include reckless conduct of the kind set forth in the Model Penal Code.
> Where actual knowledge of wrongdoing is lacking, we consider conduct as
> equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a
> substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary
> duty. *ALI Model Penal Code § 2.02(2)(c).*  That risk "must be of such a nature and
> degree that, considering the nature and purpose of the actor's conduct and the
> circumstances known to him, its disregard involves *a gross deviation* from the
> standard of conduct that a law-abiding person would observe in the actor's
> situation." *Id.*  (emphasis added). Cf. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185,
> (1976) (defining scienter for securities law purposes as "a mental state embracing
> intent to deceive, manipulate, or defraud").

*Bullock*, 569 U.S. at  274, 133 <u>S. Ct.</u> 1754, 1760, 185 <u>L. Ed.</u> 2d 922 (2013); *see also In re*

*McCaffery*, AP 14-1887, 2016 WL 7241377, at *3 (Bankr. D.N.J. Dec. 13, 2016) (The court

finding that the debtor was acting with gross recklessness with respect to his fiduciary duty for

spending the money entrusted to him).

The Third Circuit Court of Appeals has not yet spoken on how to define defalcation. *In re*

*Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008). However, the *Tamis* court is persuaded by the fact

that *Baylis* and *Hyman* state  a  standard  for defalcation that  is  most  in  harmony  with  the

Bankruptcy Code generally, and § 523(a)(4) in particular.  *In re Tamis*, 398 B.R. at 131. In *Baylis*,

the First Circuit imposes a higher threshold, requiring a showing of extreme recklessness, "akin to

the level of recklessness required for scienter." *In re Baylis,* 313 F.3d 9, 20 (1st Cir. 2002) (the

court finding that the plaintiff mush show that the debtor's actions were so egregious that they

come close to the level that would be required to prove fraud, embezzlement, or larceny. In *Hyman*, the Second Circuit recently announced its agreement with *Baylis,* stating that "defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness—a showing akin to the showing required for scienter in the securities law context." *In re Hyman,* 502 F.3d 61, 68 (2d Cir. 2007) (the court defining recklessness as conduct not involving simple, or inexcusable negligence, but an extreme departure from the standards of ordinary care).

Furthermore, other courts in the Third Circuit have expanded on the scienter requirement to fall into two categories that may constitute a nondischargeable defalcation under § 523(a)(4). *In re Pearl*, 502 B.R. 429, 440–41 (Bankr. E.D. Pa. 2013). The *Pearl* Court found that in one category is a defalcation involving "bad faith, moral turpitude, or other immoral conduct (such as self-dealing), and in a second category is a defalcation requiring something less: recklessness which the court described as a conscious disregard of, or a willful blindness to, a substantial and unjustifiable risk. *Id.* at 441. However, not all breaches of fiduciary duties rise to the level of a defalcation under § 523(a)(4) *Id*. at 442 (Where the plaintiff relies heavily on the rulings of a state court, the Court determined that it could not solely rely on the State's courts findings of a fiduciary breach). *In re Pearl*, 502 *B.R.* 429, 442 (Bankr. E.D. Pa. 2013); *see also In re Aiello*, 533 B.R. 489, 501 (Bankr. W.D. Pa. 2015). The court must consider the debtor's actual knowledge and circumstances (*i.e.,* the subjective) and then decide whether the related conduct constituted a gross deviation     from     legal     standards     of     conduct     (*i.e.,* the     objective). *In re Pearl*, 502 B.R. 429, 441 (Bankr. E.D. Pa. 2013) (The court stating that recklessness required for defalcation requires consideration of the debtor's subjective mind).

Lastly, in order to satisfy the defalcation requirement, Plaintiff must demonstrate that Defendant had actual knowledge of the breach or that he consciously disregarded a substantial or

unjustifiable risk. *In re Guarracino*, 575 B.R. 298, 313 (Bankr. D.N.J. 2017).

In the instant case, the Debtor refutes the Plaintiff's claims that there was a breach of a fiduciary duty by fraud or defalcation because the Debtor did not defalcate funds knowingly or through conscious disregard as the Courts held in *Bullock*, *Baylis*, *Hyman*, and *Pearl*.

The Plaintiff attempts to persuade this Court into granting summary judgment in its favor by distorting and twisting the facts. It states in the Plaintiff's Statement of Material Facts Not Subject to Genuine Dispute – Docket Entry No. 9-26 ("Plaintiff's Statement") that the Debtor maintained two sets of books for his own personal gain and that the Debtor directed the deletion of financial information, so the misappropriation of funds would be untraceable. *See* Plaintiff's Statement, pg. 5, ¶ 21, Subpar. 21(A) and (B). However, the Plaintiff reaches these conclusions without providing any evidence that the Debtor intentionally directed the deletion of financial information, and other than reiterating the that the Debtor maintained a cash ledger, the Plaintiff fails to demonstrate that the Debtor intentionally kept a cash ledger to misappropriated funds

In fact, the Plaintiff inflates the statement of its own expert, Joseph Petrucelli, CPA ("Petrucelli"), to make the incredulous leap that the Debtor had intentionally directed his employees to delete data so it could not be recovered as referenced in Exhibit C in the Declaration of Christine Gillen, Esq. in Support of Plaintiff's Motion for Summary Judgment ("Gillen Dec.") (Docket Entry No. 9-15). In the actual exchange as transcribed in Exhibit C to the Gillen Dec., the accountant describes the process of "purging" financial records, or as Petrucelli describes it, "*Normally purged in our world means just you take the data and condense it, so like you know you can like close out a period and move forward*". *See*, Gillen Dec. Exhibit C. 4T:433-1 to -20; *see also* Gillen Dec. Exhibit C. 4T:459-15 to -24. Nowhere does the Plaintiff state as to how it reached its conclusion that the Defendant intentionally directed the deletion of financial records, but it

asserts it as an undisputed fact.

Furthermore, the Plaintiff states that the Debtor kept a personal cash ledger ("the Ledger") to avoid payment of payroll taxes and that the Ledger was omitted from Marinero Grill's ("MG") official books. *See* Plaintiff's Statement, pg. 6, ¶ 22. As noted in the Plaintiff's moving papers, the Defendant admits to the existence of the Ledger, but what Plaintiff failed to mention was the fact that the Ledger was part of MG's "official books" and not the personal cash ledger for the Debtor to siphon funds from MG as the Plaintiff attempts to infer.

The Defendant states that he only knew of "one book" (referring to the Ledger) where the financial records of MG were kept. *See*, Gillen Dec. Exhibit G. 9T:1099-1 to -17. It was never the intent of the Defendant to siphon funds for his own personal gain nor did he ever knowingly or with conscious disregard siphon funds from MG for his own personal gain. In fact, the Defendant and his staff, have always been forthcoming with information disclosed in the State matter. As stated in the Interim Award, and as a reference to testimony of Kalman Barson ("Barson") regarding the assistance of the Defendant's bookkeeper: "Ms. Gonzalez (Nuria Gonzalez – Debtor's bookkeeper) was cooperative. We felt that she was open with us in terms of explaining situations and she share that type of information with us." *See*, Gillen Dec. Exhibit N, Interim Award, pg. 32.

Even still, the Plaintiff has failed to demonstrate that the Defendant kept the Ledger to siphon funds for his own personal gain. The Plaintiff bases its argument on the logical findings of an Arbitrator that infers the misappropriation of funds, but never actually determined that the Defendant intentionally misappropriated funds from MG for his own personal gain. The Plaintiff has not demonstrated that the Defendant was intentionally misappropriating funds for his own personal gain nor has the Plaintiff demonstrated that the Defendant knowingly, or with a conscious

disregard, misappropriated funds. At most, the Defendant is negligent, but he did not misappropriate the funds knowingly nor with a conscious disregard of an unjustifiable risk.

In addition, the Arbitrator found that "the existence of the Ledger and the admitted underreporting of sales and the cash payment to employees without the corresponding withholding tax reflect a poorly run business." *See*, Gillen Dec. Exhibit N, Interim Award, pg. 34. Although both experts, Barson and Petrucelli, opined that the Defendant had concealed revenue and that "money went into the [Defendant's] pocket," the Arbitrator could not obtain direct evidence of these claims. *See*, Gillen Dec. Exhibit N, Interim Award, pg. 38.

As the *Pearl* court, this Court should look at all of the factors surrounding the case (the Defendant's actual knowledge of the circumstances [*i.e.,* the subjective] and then decide whether the related conduct constituted a gross deviation [*i.e.,* the objective] and not solely focus on the Arbitrator's logical inference that the Defendant misappropriated MG funds when there is no direct evidence to support the conclusion that he knowingly, or with a conscious disregard, defalcated funds. Although objectively, a court could find that funds that are unaccounted for constitutes defalcation pursuant to section 523(a)(4), here, in considering the subjective element that the *Pearl* court discussed, there is no evidence that the Defendant knew that funds were being misappropriated, and no evidence that the Defendant intentionally misappropriated funds from MG.

In fact, and as stated earlier, the Defendant states that he only knew of "one book" (referring to the Ledger) where the financial records of MG were kept. *See*, Gillen Dec. Exhibit G. 9T:1099-1 to -17. It was never the intent of the Defendant to siphon funds for his own personal gain nor did he ever knowingly or with conscious disregard siphon funds from MG for his own personal gain.

Following the holdings in *Bullock*, *Baylis*, *Hyman*, where the mental requisite to find

fiduciary defalcation requires a finding that the Debtor knowingly or with conscious disregard misappropriated funds, the Plaintiff has failed to support the alleged undisputable facts that the Defendant 1) knowingly or with conscious disregard kept a cash Ledger for the sole purpose of misappropriating funds; 2) knowingly or with conscious disregard kept a cash Ledger for the purposes of avoiding the payment of income taxes; 3) knowingly or with conscious disregard paid employees in cash to avoid the payment of employee tax withholdings; and 4) knowingly or with conscious disregard direct his employees to destroy evidence of any alleged misappropriation or defalcation of funds. At most, the Plaintiff can demonstrate the Defendant was negligent in the record keeping of MG's finances and negligently failing to pay income taxes or withholding employment taxes. However, the Plaintiff cannot support his conclusion that the Defendant knowingly or with conscious disregard misappropriated MG's funds.

Therefore, because the Plaintiff has failed to provide concrete evidence to demonstrate that the Defendant intentionally, knowingly, or with a conscious disregard defalcated the funds in question pursuant to section 523(a)(4) and the relevant case law, there is a genuine dispute of material fact as to the Defendant's state of mind, and thus summary judgment should not be granted in favor of Plaintiff.

### iii. Summary Judgment for Non-Dischargeability of Debt Pursuant to Section 523(a)(6) Cannot be Granted in Favor of the Plaintiff Because the Plaintiff Failed Demonstrate Sufficient Evidence to Support the Argument that the Defendant Willfully and Maliciously Misappropriated the Funds in Question

Pursuant to 11 U.S.C. § 523(a)(6), debts resulting from a debtor's willful and malicious injury to another are not dischargeable in the debtor's bankruptcy proceeding. 11 U.S.C. § 523(a)(6). Whether debt is nondischargeable based on willful and malicious injury is question of federal law. *In re Tomsic*, 104 B.R. 22, 36 (Bankr. N.D. Ind. 1987).

Section 523(a)(6) requires an act that is both "willful" and "malicious"… "Willful" is generally understood to mean voluntary, intentional or deliberate. *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61. "[R]ecklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. *See also In re Hawkins,* 231 B.R. 222, 228 (D.N.J.1999); *In re Reath*, 368 B.R. 415, 426 (Bankr. D.N.J. 2006). The Supreme Court in *Kawaauhau* did not specify the precise mental state necessary to rise to the level of "willful and malicious." *In re Conner,* 302 B.R. 509, 514 (Bankr.W.D.Pa.2003) (citing to *In re Jercich,* 238 F.3d 1202, 1207 (9th Cir.).

The Third Circuit has not addressed the requisite state of mind necessary to rise to the level of "willful and malicious" since. However, prior to *Kawaauhau v. Geiger*, the Third Circuit held "that actions are willful and malicious within the meaning of § 523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury." *In re Reath,* 368 B.R. at 426 citing *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994) (If the actor knows that the consequences are certain or substantially certain to result from his act, and still goes ahead, he is treated as if he had in fact desired to produce the result); *see also In re Peterson*, 332 B.R. 678, 682 (Bankr. D. Del. 2005) (the injury is willful and malicious if the debtor caused harm through a deliberate action with an objective substantial certainty of injury); *In re Casini* 307 B.R. 800, 820 (Bankr. D.N.J. 2006) (the willful and malicious exception to discharge applies only to acts done with actual intent to cause injury and not merely a deliberate or intentional act that leads to the injury); *In re Groff*, 301 B.R. 644, 650 (Bankr. D.N.J. 2003) (Plaintiff failed to establish that the debtor's actions were done with the intent to cause the injury).

As the Supreme Court held in *Kawaauhau v. Geiger,* recklessly or negligently inflicted injuries do not fall within the compass of section 523(a)(6). *Id.* at 61. Here, the Defendant recognized his failure in negligently failing to keep accurate financial records of MG. The Defendant also recognizes his failure in negligently failing to pay the proper payroll taxes. However, as *Kawaauhau v. Geiger* explains, section 523(a)(6) requires that the Defendant take a deliberate or intentional injury, not a deliberate or intentional act that leads to injury. *Id.*

First, the Defendant has vehemently denied, and continues to deny, that he intentionally or deliberately kept the Ledger to siphon funds for his own personal gain. Second, Defendant also denies that he intentionally or deliberately kept the Ledger to avoid the payment of payroll taxes. Lastly, the Defendant denies that he intentionally or deliberately misappropriated funds from MG to injure the Plaintiff.

In the Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment "Plaintiff's Brief"), the Plaintiff states that the state court judgment and arbitration award found that "the Defendant willfully, intentionally, and maliciously diverted cash from MG, oppressed the Plaintiff's rights in MG and thereby damaged Plaintiff and Plaintiff's property. See Plaintiff's Brief, pg. 14, (Subsection V., ¶ 1). However, nowhere on the aforementioned arbitrary award does it state that the Defendant was found to have willfully, intentionally, and maliciously misappropriated funds with the deliberate objective to oppress and injure the Plaintiff. Nor does the Plaintiff proffer any evidence to demonstrate that the Defendant's deliberate objective was to injure the Plaintiff which is an essential element to find a claim nondischargeable pursuant to section 523(a)(6).

Finally, the Plaintiff in its moving papers attempts to establish debts arising from shareholder oppression (where there is conversion of assets) are ineligible for discharge pursuant

to section 523(a)(6). See Plaintiff's Brief, pg. 15, (Subsection V., ¶ 1). In his argument the Plaintiff cites case law that, instead of helping his argument, sheds light on the element of deliberate intent to injure the Plaintiff necessary to find a debt nondischargeable in accordance to section 523(a)(6). The Plaintiff relies on *In re Frank*, where the court found that the state court judgment determined that the debtor intentionally diverted corporate assets, equipment, money, financial opportunities, business relationships, and other property for the debtor's own benefit, and thus finding that conversion of property clearly falls within the willful and malicious injury to persons or property contemplated in 11 U.S.C. § 523(a)(6). *In re Frank*, 425 B.R. 435, 443 (Bankr. W.D. Mich. 2010).

Unlike *Frank,* neither the arbitration award nor the state court found that the Defendant deliberately kept the Ledger to misappropriate funds and intentionally avoid the payment of payroll taxes, with the overall objective to injure the Plaintiff. Aside from making baseless arguments, the Plaintiff has failed to demonstrate evidence of intent. As such, genuine issues of material fact exist as to whether the Defendant deliberately, willfully or maliciously, misappropriated funds with the objective of injuring the Plaintiff.

Further, the Plaintiff also relies on *Gave v. Rosenbaum*, where the court found that the debtors engaged in actual fraud by deliberately misrepresenting to investors the financial health of a company, breaching their fiduciary duties owed to shareholders, and intentionally defrauded shareholders for their own benefit. *In re Rosenbaum*, 08-43029, 2010 WL 1856344, at 13 (Bankr. E.D. Tex. May 7, 2010) (actual fraud and misrepresentation for the debtors' personal gain rose to the level of willful and malicious conduct). As stated above, the Plaintiff points out in his brief, the state court and arbitrator found that the Defendant deliberately, willfully, and maliciously committed fraud for his own personal gain. See Plaintiff's brief, at Id. Unlike *Gave*, where the debtors were found to have committed actual fraud by deliberately misrepresenting to

shareholders, the Plaintiff has failed to demonstrate how it came to the conclusion that the

Arbitrator's logical inference that funds had been misappropriated from MG equates to actual fraud

which is yet to be proven due to the lack of evidence against the Defendant. As such, genuine

issues of material fact exist as to whether the Defendant deliberately, willfully or maliciously,

misappropriated funds with the objective of injuring the Plaintiff.

### C. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXISTS AS TO WHETHER THE DEFENDANT FAILED TO MAINTAIN ADEQUATE BUSINESS RECORDS FOR MARINERO GRILL AND SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION 727(a)(3)

Plaintiff seeks to have the Defendant denied a discharge under § 727(a)(3). "Completely

denying a debtor his discharge ... is an extreme step" which "should not be taken lightly." *Rosen*

*v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir.1993). Consequently, objections to discharge under §

727(a) are strictly construed against the creditor and liberally construed in favor of the debtor. *In*

*re Luby,* 438 B.R. 817, 826 (Bankr.E.D.Pa.2010).

Section 727(a)(3) prohibits discharge when a debtor "has concealed, destroyed, mutilated,

falsified, or failed to keep or preserve any recorded information, including books, documents,

records, and papers, from which the debtor's financial condition or business transactions might be

ascertained, unless such act or failure to act was justified under all of the circumstances of the

case." 11 U.S.C. § 727(a)(3). In order to state a claim under § 727(a)(3), "a creditor objecting to

the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and

(2) that such failure makes it impossible to ascertain the debtor's financial condition and material

business transactions." *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992).

The purpose of § 727(a)(3) is to insure that the debtor provides the trustee and his creditors

with sufficient information to "ascertain the debtor's financial condition and track his financial

dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir.1996) quoting *In re Martin,* 141 B.R. 986, 995 (Bankr.N.D.Ill.1992). "It also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *In re Jacobs,* 381 B.R. 147, 166 (Bankr.E.D.Pa.2008) quoting *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992). *See also In re Von Kiel,* 461 B.R. 323, 336 (Bankr.E.D.Pa.2012) quoting *In re Jackson,* 453 B.R. 789, 796 (Bankr.E.D.Pa.2011) ("As a precondition to the bankruptcy discharge, § 727(a)(3) requires a debtor to produce information for creditors to determine and track the debtor's financial ... transactions for a reasonable time prior to bankruptcy").

In *Meridian Bank v. Alten,* the Third Circuit addressed the record-keeping obligations of a debtor, noting that the Bankruptcy Code does not require a debtor to maintain a bank account nor "an impeccable system of bookkeeping." 958 F.2d 1226, 1230 (3d Cir.1992). "Nevertheless," the Third Circuit observed, "the records must "sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *Id.* at 1230. "A debtor's records must be such that '[c]reditors ... [are] not forced to undertake an independent investigation of a debtor's affairs.' " *In re Juzwiak,* 89 F.3d 424, 429 (7th Cir.1996) quoting *United States v. Ellis,* 50 F.3d 419, 424 (7th Cir.1995); *see also In re Buzzelli,* 246 B.R. 75, 96–97 (Bankr.W.D.Pa.2000).

"The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992) quoting *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979). In order to obtain the benefits of a Chapter 7 discharge, a debtor has "a legal duty to maintain adequate records of his income and

expenses." *Id.* at 1232. Bankruptcy courts have broad discretion "in determining whether a debtor's records are sufficient under § 727(a)(3)." *In re Jackson,* 453 B.R. 789, 796 (Bankr.E.D.Pa.2011).

The Third Circuit's two-fold test for § 727(a)(3) requires that a party objecting to discharge under § 727(a)(3) must show that: (1) the debtor failed to maintain and preserve adequate records; and (2) the failure made it impossible to ascertain the debtor's financial condition for a reasonable period past to present. *See Roodhof v. Roodhof,* 491 B.R. 679, 688 (Bankr.M.D.Pa.2013) (*citing Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992)).

If the plaintiff proves both prongs of the aforementioned test by a preponderance of the evidence, *Haupt v. Belonzi (In re Belonzi),* 476 B.R. 899, 904 (Bankr.W.D.Pa.2012), then the debtor must justify his/her failure to maintain and preserve adequate records under the circumstances. *Id*. Some of the factors the court should consider when analyzing the sufficiency of debtor's justification include: (1) debtor's education; (2) debtor's sophistication; (3) volume of debtor's business; (4) complexity of debtor's business; (5) amount of credit extended to debtor in his business; (6) any other circumstances that should be noted in the interest of justice. *Roodhof v. Roodhof,* 491 B.R. 679, 688 (Bankr.M.D.Pa.2013) (*citing Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992)).

Here, Plaintiff relies on the accountant's analysis of the former business operations for the years 2010 to 2014. There has been no allegation that the Defendant is unable to explain his financial affairs since 2014 and indeed he has provided full disclosure of his financial affairs in his petition schedules.  He testified competently at the Meeting of Creditors at which he responded to all inquires made by Plaintiff's counsel in addition to the Office of the US Trustee.  Moreover, Plaintiff has not demanded discovery in this case.

Therefore, Defendant asserts that the scope of accountant's investigation into MG was too far in the past to warrant denial of a discharge now: business transactions from 2014 and before, does not shed light on his financial affairs within a reasonable period.

**D. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXISTS AS TO WHETHER THE DEFENDANT CAN PROVIDE A SATISFACTORILY EXLANATION REGARDING THE FUNDS IN QUESTION AND SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION 727(a)(5)**

Under this provision, a discharge is denied if "the debtor fail[s] to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Like § 727(a)(3), this provision contains a burden-shifting inquiry. *In re Jacobs,* 381 B.R. 147, 168 (Bankr.E.D.Pa.2008) citing *In re Wasserman,* 332 B.R. 325, 333 (Bankr.N.D.Ill.2005). First, the creditor must show that the debtor at one-time owned tangible assets that are no longer available to creditors. *In re Jacobs,* 381 B.R. at 168. If the creditor meets his burden, then the burden shifts to the Debtor to give a "satisfactory explanation" for why the assets are no longer available. *Id.*

"To explain satisfactorily" is a broad term that is not defined in the Code. *In re Kamara,* 10-12766 BLS, 2012 WL 5879718, at 4 (Bankr. D. Del. Nov. 20, 2012). Court's interpreting the phrase have held that the debtor's explanation "must be worthy of belief and appear reasonable, such that the court no longer wonders what happened to the assets." *Id.* citing *In re Luby,* 438 B.R. 817, 834 (Bankr.E.D.Pa.2010). This "explanation must consist of more than vague, indefinite, and uncorroborated assertions." *In re Coley,* 433 B.R. 476, 490 (Bankr.E.D.Pa.2010). However, the debtor is not compelled to present documentary evidence for an explanation to be satisfactory; the burden can be met with oral testimony. *In re Hudgens,* 149 Fed.Appx. 480, 488 (7th Cir.2005); *see*

*also In re Kamara,* 2012 WL 5879718 at 4 (the court stating that documentation is preferable but not necessary). Essentially, it is the bankruptcy judge's assessment of the debtor's credibility and consistency that will [help the most] in finding a satisfactory explanation. *In re Kamara,* 2012 WL 5879718, at 4; *see also In re Martin,* 698 F.2d 883, 886 (7th Cir.1983) (bankruptcy judge's credibility assessment is a critical finding of fact that will only be overturned if clearly erroneous); *Knetzer v. Larking,* 178 F.2d 532, 533 (2d Cir.1949) (debtor's "contradictory and hardly credible testimony" led to denial of discharge).

Here, the only assertion that the Debtor has not been able to explain a loss of assets rests on the accountant's finding that not all revenue has been accounted for. The Defendant has certified that the unaccounted-for revenue was in fact used to pay expenses which were not considered by the accountant. The revenue is not available to creditors now, simply because it was spent to pay creditors previously.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that the Plaintiff's Motion for summary judgment be denied.

> **SCURA, WIGFIELD, HEYER,**
> **STEVENS & CAMMAROTA, LLP**
> Attorneys for Abel Hernandez

Date: April 10, 2018          BY: /s/ David L. Stevens
                                    David L. Stevens